Dewayne R. VonFELDT, Plaintiff
Below, Appellant,

v.

STIFEL FINANCIAL CORP., a Corpo-
ration of the State of Delaware,
Defendant Below, Appellee.

No. 357, 1997.

Supreme Court of Delaware.

Submitted: April 16, 1998.
Decided: June 3, 1998.
Rehearing Denied Aug. 7, 1998.
As Revised Aug. 7, 1998.

Robert J. Valihura, of Duane, Morris &
Heckscher, Wilmington; and Matthew A.
Taylor (argued), of Duane, Morris &

Heckscher, Philadelphia, Pennsylvania, for appellant.

Thomas A. Beck, and Megan Semple Greenberg, of Richards, Layton & Finger, Wilmington; and Gerard T. Carmody (argued) and J. Thomas Archer, of Bryan Cave L.L.P., St. Louis, Missouri, for appellee.

Before VEASEY, C.J., WALSH, HOLLAND and BERGER, JJ., and RIDGELY, President Judge,[1] constituting the Court en Banc.

VEASEY, Chief Justice:

This appeal challenges a decision of the Court of Chancery denying a corporate director's request for indemnification and advance of legal fees and expenses. The Court of Chancery ruled that defendant corporation's bylaws do not entitle plaintiff to be indemnified or to receive advance of legal fees and expenses. The trial court also ruled that no contract exists whereby defendant must pay for plaintiff's defense in pending litigation. We reverse, in part, the former holding because we find that, under the bylaws, plaintiff is entitled to indemnification because plaintiff was serving a wholly-owned subsidiary at the request of the parent. We affirm, however, the finding of the Court of Chancery that there was no contract requiring the relief sought.

### Facts

Defendant Stifel Financial Corp. ("Stifel Financial") is a Delaware corporation. Stifel Nicolaus Corp. ("SNC") is a securities broker-dealer and the wholly-owned operating subsidiary of Stifel Financial. At all relevant times, Stifel Financial has owned 100% of the outstanding SNC stock. Plaintiff Dewayne R. VonFeldt joined the SNC board in 1971

and served as an SNC director continuously until 1994. Throughout this period, VonFeldt served as well as an employee and officer of SNC, managing its operations in Oklahoma. VonFeldt also served on the Stifel Financial board from 1983 until 1987, and then again from 1992 until 1994.

In his complaint in the Court of Chancery, VonFeldt sought indemnification from Stifel Financial for expenses incurred in defending, and amounts paid in settlement of, a third-party (*i.e.*, a nonderivative) action brought by Mid–America Healthcare, Inc. (the "MAH action"). In addition, he sought to compel Stifel Financial to advance the costs of defending three other lawsuits that were still pending when the Court of Chancery issued a decision in this case.[2] Finally, VonFeldt requested reimbursement for expenses incurred in bringing the present action for indemnification.

Each of the four underlying lawsuits arose from events in the late 1980s, at a time when VonFeldt was not a member of the Stifel Financial Board. Stifel Financial was not a party to any of the four actions, and none implicates VonFeldt's service as a Stifel Financial director.[3] Rather, all four call into question his conduct as a director, officer and employee of SNC.

VonFeldt advanced two separate theories of relief. The first looked to Stifel Financial's corporate bylaws, which, according to VonFeldt, oblige Stifel Financial to indemnify him in connection with the MAH and NASD actions. The second sought recognition of a contractual duty of Stifel Financial to advance the costs of defending the two pending actions, as well as the costs of bringing the present suit. What follows is a brief

1. Sitting by designation pursuant to Del. Const., art. IV, § 12, and Supreme Court Rules 2 and 4(a).

2. From the representations of counsel, we understand that one of these actions—involving a proceeding against VonFeldt before the National Association of Securities Dealers, Inc. (the "NASD action")—has resulted in a recent arbitration award holding VonFeldt liable to SNC for

over $1 million in damages. The NASD action is the subject of ongoing proceedings, as SNC has filed an action in federal district court seeking to confirm the arbitration decision.

3. The pleadings in the NASD action name VonFeldt as a defendant both as a Stifel Financial director and as an employee, officer and director of SNC. In substance, however, only his conduct on behalf of SNC was at issue in the case.

account of the basic factual disputes underlying these two claims.

### 1. The Indemnification Claim

Like most corporations, Stifel Financial has adopted an indemnification bylaw that protects not only its own officers, directors and employees, but also those who serve other enterprises at its request. Stifel Financial's indemnification bylaw is maximally broad, mandating indemnification to the full extent permitted by Delaware law.[4] The bylaw thus requires Stifel Financial to provide indemnification under the circumstances described in 8 *Del.C.* § 145(a), where indemnification is permissive by default.[5]

To bring himself within the protective scope of Stifel Financial's indemnification bylaw, VonFeldt sought to convince the trial court that he served SNC at defendant's request.[6] To this end, he adduced considerable evidence of Stifel Financial's control and domination of SNC. His evidence tended to show that: Stifel Financial's board set corporate policy and controlled the operations of SNC; SNC's directors were handpicked by Stifel Financial; Stifel Financial appointed and established compensation for all key SNC personnel; and the Stifel Financial board considered and approved employment contracts with the most critical of SNC employees. As specific proof that his own work for SNC was at Stifel Financial's request, VonFeldt offered evidence that his services to SNC were subject to employment and termination fee agreements considered and approved by the Stifel Financial board. He also claimed that it was the Stifel Financial board that, in 1994, terminated his employment with SNC.

Stifel Financial argues that it and SNC are completely separate entities under the law, and that it exerts no direct control over the personnel decisions of SNC. Moreover, Stifel Financial disputed plaintiff's claim that the Stifel Financial board considered and approved his employment contract with SNC. Finally, Stifel Financial noted that VonFeldt produced no evidence that Stifel Financial ever made an explicit request that he serve in any capacity at SNC. These deficiencies in plaintiff's case, defendant argues, preclude a finding that he served SNC "at the request of" the parent corporation.

### 2. The Contract Claim

As noted, VonFeldt put in two separate stints as a member of the Stifel Financial board. The first lasted from 1983 until 1987. Before VonFeldt's resignation in 1987, the firm let its director-and-officer liability insurance lapse because of its excessive renewal cost. For a short time thereafter, defendant's board functioned without insurance coverage or any other protection from legal liability. After VonFeldt left the board, however, Stifel Financial received a surprise tender offer. As a result, in June 1987 it entered into indemnification agreements with each of its then-serving board members.

A major dispute at trial concerned whether plaintiff ever entered into such an agreement with Stifel Financial. VonFeldt claims that he did, and that the contract entitles him to advancement of fees and expenses in the two pending actions, as well as to indemnification

---

**4.** The text of the bylaw, in relevant part, reads as follows:

> The Corporation shall indemnify to the full extent authorized by law any person made or threatened to be made a party to any action, suit or proceeding ... by reason of the fact that he ... is or was a director, officer or employee of the Corporation or any predecessor of the Corporation or serves or served any other enterprise as a director, officer or employee *at the request* of the Corporation or any predecessor of the Corporation. [emphasis supplied]

**5.** Section 145(a) authorizes, but does not require, indemnification in connection with third-party

actions. "Virtually all" public corporations have extended indemnification guarantees via bylaw to cases where indemnification is typically only permissive. *Advanced Mining Sys., Inc. v. Fricke*, Del.Ch., 623 A.2d 82, 83 (1992); *see generally* E. Norman Veasey, et al., *Delaware Supports Directors with a Three–Legged Stool of Limited Liability, Indemnification, and Insurance*, 42 Bus. Law. 399, 406–12 (1987).

**6.** This was a necessary element of his case since, as noted, the events giving rise to the underlying lawsuits did not implicate his service as a Stifel Financial director. To recover, therefore, VonFeldt had to invoke the "at the request of" language found in both the bylaw and in 8 *Del.C.* § 145(a).

for the costs of bringing the action sub judice. He claims he would not have rejoined defendant's board in 1992 without the protection the agreement affords. Stifel Financial argues that neither VonFeldt nor anyone else who joined its board after June 1987 received an indemnification agreement. Furthermore, Stifel Financial offers an alternative explanation for VonFeldt's decision to rejoin the board. Stifel Financial suggests that VonFeldt left the board in 1987 because he did not want his compensation disclosed on the firm's 10–K filing, and that he returned only when told that, as a "highly compensated" officer of a subsidiary, his compensation would be disclosed whether or not he was a member of Stifel Financial's board.[7]

At trial, VonFeldt was unable to produce a signed copy of the agreement.[8] His proof of its existence consisted predominantly of statements found in Stifel Financial's SEC filings. In 1994, Stifel Financial submitted an S–8 filing that contained the following statement:

> The Company has entered into Indemnification Agreements with each member of its Board of Directors. Pursuant to these Indemnification Agreements, the Company agrees to hold harmless each director ... generally to the full extent permitted by the Delaware General Corporation Law, as it may be amended from time to time....

Since 1987, similar statements had appeared sporadically in the firm's public filings. Thus, after VonFeldt returned to the Stifel Financial board in 1992, Stifel Financial continued to represent publicly that it had entered into indemnification agreements with "each" member of its board.[9]

In response, defendant suggested that its failure to amend its SEC filings to reflect that not every director had an indemnification agreement was inadvertent error. Moreover, Stifel Financial pointed out that no other director who joined its board after 1987 believed he or she had an indemnification agreement. And Stifel Financial sought to cast doubt on VonFeldt's claims by showing that at no point after his return to the board in 1992 did he ask to sign or even see a copy of the alleged agreement.

### Disposition in the Court of Chancery.

On August 18, 1997, following trial, the Court of Chancery issued an opinion dismissing VonFeldt's claims in their entirety.[10] The Court found that VonFeldt failed to carry his burden of proving that his services to SNC were at Stifel Financial's request.[11] The Court further held that VonFeldt failed to prove the existence of an indemnification agreement, and that Stifel Financial was not precluded from denying the existence of the agreement on grounds of promissory or equitable estoppel. VonFeldt now appeals this decision.

### Standard And Scope of Review

In our view, this appeal raises issues of both law and fact. The nature of Stifel Financial's relationship with SNC, and the extent to which Stifel Financial is responsible for VonFeldt's employment and directorship at SNC, are both factual questions. Likewise, whether the parties entered into an indemnification agreement is an issue of pure fact. As to these issues, we accord great deference to the findings of the Court of Chancery.[12] We will not disturb the Court's

---

7. Stifel Financial pointed out as well that it had secured new director-and-officer insurance coverage by the time VonFeldt returned to the board, largely obviating the need for contractual protection.

8. On cross-examination he admitted that he was not sure he had ever actually seen one.

9. VonFeldt suggested that, for a time, Stifel Financial acted "consistently" with the existence of an agreement in that, with respect to one of the underlying actions, Stifel Financial first advanced attorneys' fees to VonFeldt, and later directed him to select counsel from a list approved by Stifel Financial.

10. *VonFeldt v. Stifel Financial Corp.*, Del.Ch., C.A. No. 15688 (Aug. 18, 1997) (Mem.Op.) [hereinafter *Mem.Op.*].

11. *Id.* at 2–3.

12. *See Zirn v. VLI Corp.*, Del.Supr., 681 A.2d 1050, 1055 (1996).

factual determinations unless they are clearly wrong and justice requires their overturn.[13]

But to state, as did the Court of Chancery, that plaintiff did not serve SNC "at the request of" Stifel Financial is to imply certain legal conclusions. It implies a specific reading of Section 145(a), an interpretation of the statute that demands more evidence of a "request" than VonFeldt was able to marshall here. What it means for a person to serve one entity "at the request of" another is a legal issue that we resolve de novo.[14] Therefore, while we accept the factual findings of the trial court that are not clearly wrong, we will decide as a matter of law whether, on that factual record, plaintiff is entitled to the protections of Section 145(a) and defendant's indemnification bylaw.

### Discussion

#### 1. The Indemnification Claim

VonFeldt is entitled to indemnification only if, at the time of the events at issue in the MAH and NASD actions, he was serving SNC "at the request of" Stifel Financial. At trial, VonFeldt attempted to prove as much by showing that his work for SNC had, in effect, Stifel Financial's "fingerprints" all over it. He offered considerable evidence of Stifel Financial's domination of SNC, including proof that Stifel Financial set corporate policy, controlled operations, and selected key personnel for SNC. Moreover, he adduced evidence that the Stifel Financial board had considered and approved his em-ployment and termination fee contracts, and that Stifel Financial was ultimately responsible for terminating his employment at SNC.

To this extent, however, the record is in conflict. Stifel Financial rebutted plaintiff's claims with evidence that it was not a party to VonFeldt's employment contract, and that it bore no direct responsibility for VonFeldt's conduct as an officer and employee of SNC. We recognize that, where the record is ambiguous, it falls on the trier of fact to evaluate the relative credibility of the parties' evidence. In this case, the Court of Chancery resolved these factual disputes in favor of Stifel Financial.[15] As an appellate court, we do not review determinations of credibility.[16] Therefore, we defer to the trial court's findings of fact, and accept, for purposes of this appeal, Stifel Financial's contentions that it is not responsible for VonFeldt's employment contract, and that it was never active in setting the terms or conditions of VonFeldt's employment with SNC.[17]

As a result, VonFeldt has but one arrow left in his quiver: SNC's status as a wholly-owned subsidiary of Stifel Financial. As noted, Stifel Financial has, at all relevant times, owned 100% of the outstanding stock of SNC. Clearly, then, as the only entity with the right to vote in SNC board elections, Stifel Financial is solely responsible for electing all of SNC's current and past directors, VonFeldt included. This appeal, then, reduces to a narrow legal question— whether the election of a director to the board of a wholly-owned subsidiary by the

13. *Levitt v. Bouvier,* Del.Supr., 287 A.2d 671, 673 (1972).

14. *See Arnold v. Society for Sav. Bancorp, Inc.,* Del.Supr., 650 A.2d 1270, 1287 n. 30 (1994) (statutory interpretation is question of law subject to de novo review on appeal); *Centaur Partners, IV v. National Intergroup, Inc.,* Del.Supr., 582 A.2d 923, 926 (1990) (same standard when interpreting language of corporate bylaw).

15. The Court held that, aside from evidence that Stifel Financial elected him to the SNC board, "VonFeldt provides no other persuasive evidence suggesting that he was serving SNC at the request of [Stifel Financial]." *Mem.Op.* at 3.

16. *See Levitt,* 287 A.2d at 673 (factual findings approved on review where they turn on questions of credibility).

17. We express no view regarding the relevance of such allegations in a case where a plaintiff proves them to the trial court's satisfaction. That is, we do not decide whether a parent's consideration and approval of an employment contract between plaintiff and a subsidiary amounts to a "request" within the meaning of Section 145(a). Similarly, we do not decide whether plaintiff could establish the existence of a "request" by proving that defendant corporation set the plaintiff's compensation, entered into a termination fee agreement with plaintiff, or was ultimately responsible for firing plaintiff from the entity at which he was serving. Because the Court of Chancery resolved all of these factual disputes against VonFeldt, and because these findings are not clearly wrong, the relevance of these factors is not before us on appeal.

100% stockholder parent constitutes a "request" that the director serve the subsidiary, within the meaning of 8 *Del.C.* § 145(a). This is an issue of first impression.

When faced with an interpretive problem of this sort, it is proper to search for guidance in legislative history.[18] Regrettably, here that approach is unavailing. The origins of the language in question—specifically, the portion of Section 145(a) that includes within the class of permissible indemnitees those who serve one corporation "at the request of" another—are irretrievably obscured by the fogs of time. The very first corporate indemnification statutes, Delaware's included, spoke of directors who serve one enterprise "at the request of" another, but so few legislative documents remain from the relevant time periods that reliance on legislative history is nearly impossible.

Delaware's first general corporation law, enacted in 1899, contained no provision for the indemnification of corporate officers and directors.[19] Indeed, in the pre-World War II era, indemnification statutes did not exist anywhere, as the topic was exclusively one of judge-made law. In the 1940s, however, a codification movement began to gather momentum, as state legislatures sought to clarify what had become "an intolerable common-law muddle."[20] New York was first out of the box with an indemnification statute in 1941,[21] but Delaware quickly followed with its own in 1943.[22]

Since its original incarnation, Delaware's indemnification statute has included the language at issue in this case. Sadly, there is nothing in the way of legislative history to tell us what motivated its inclusion. Any official documents that could have shed light on the textual meaning are evidently lost or destroyed. All we know is that the "at the request of" language found in the old Section 122(10) was not an original invention of the drafters, for it was apparently commonplace for corporations to include such language in their indemnification bylaws in the pre-codification era.[23]

Absent historical guidance, we seek to interpret the statute according to legislative intent and policy.[24] We have long recognized that Section 145 serves the dual policies of: (a) allowing corporate officials to resist unjustified lawsuits, secure in the knowledge that, if vindicated, the corporation will bear the expense of litigation; and (b) encouraging capable women and men to serve as corporate directors and officers, secure in the knowledge that the corporation will absorb the costs of defending their honesty and integrity.[25] We eschew narrow construction of the statute where an overliteral reading would disserve these policies. In this case, the Court of Chancery, in effect, held that election to the board of a wholly-owned sub-

---

**18.** *Wylain, Inc. v. TRE Corp.*, Del.Ch., 412 A.2d 338, 347 (1979).

**19.** *See* Allen M. Terrell, *Indemnification of Employees*, 5 Del.J.Corp.L. 251, 252 (1980).

**20.** Joseph Warren Bishop, Jr., The Law of Corporate Officers and Directors: Indemnification and Insurance § 6.40 (1981).

**21.** *See* 1941 N.Y. Laws 209, § 1, codified in former N.Y.Gen. Corp. Law § 27–a (1941); 1941 N.Y. Laws 350, § 1, codified in former N.Y.Gen. Corp. Law § 61–a (1941).

**22.** *See* Del. Laws 125 (1943), codified at 8 *Del.C.* § 122(10).

**23.** *See* George T. Washington, Corporate Executives' Compensation 407 (1942). Delaware's indemnification law remained in its original form until 1967, during which time no recorded opinion explained what it means to serve "at the request of" a corporation. But during this period, the phrase worked its way into most state indemnification statutes. *See* Chester F. Relyea, Comment, *Indemnification of Management for Litigation Expenses*, 52 Mich.L.Rev. 1023, 1033 (1954) (surveying statutes). In 1967, as part of its sweeping overhaul of Delaware's corporations code, the General Assembly eliminated the so-called stockholder-creditor requirement, under which a corporation could indemnify only those who served at its request as fiduciaries of subsidiary or debtor corporations. *See* 8 *Del.C.* §§ 145(a), (b). Today, the corporations codes of all fifty states are in complete uniformity in providing indemnification rights to those who serve one corporation at the request of another. Bishop, *supra* note 20, §§ 6.36–6.86 (collecting statutes).

**24.** *Opinion of the Justices*, Del.Supr., 352 A.2d 406, 408 (1976).

**25.** *See Hibbert v. Hollywood Park, Inc.*, Del.Supr., 457 A.2d 339, 344 (1983).

sidiary does not, of its own force, constitute a "request" on the part of the parent. We disagree. The vote of a 100% stockholder is a public expression of support for the elected candidate. In unmistakable fashion, it broadcasts the stockholder's preference to have the candidate serve on the subsidiary's board. This must amount to a "request" in the eyes of the law. To require a director to prove additional facts—such as a direct communication from the parent, explicitly invoking the term *request*—would lend undue importance to the incantation of magic words.[26] We do not believe the General Assembly intended such a formalistic reading of the statute. Accordingly, where a 100% stockholder elects a director to the board of a subsidiary, that director thereafter serves the subsidiary "at the request of" the stockholder, within the meaning of 8 *Del.C.* § 145(a). By virtue of the fact that Stifel Financial elected VonFeldt to the board of its wholly-owned subsidiary, VonFeldt is deemed to be serving the subsidiary at the request of the parent. He therefore has standing to invoke the protections afforded by Section 145 and Stifel Financial's Indemnification bylaw.

We are aware that the pleadings in the MAH action named VonFeldt as a defendant in his capacity as an officer and employee of SNC, rather than as an SNC director. This distinction is immaterial. In keeping with the aversion to undue formalism, we decline to engage in the hyper-technical exercise of trying to measure the "scope" of Stifel Fi-

nancial's request against the various roles VonFeldt filled at SNC. Stifel Financial was surely aware that, in today's corporate world, directors will commonly extend their official activities beyond the four walls of the boardroom. Sometimes directors will involve themselves in the day-to-day management of the firm's operations, thereby assuming multiple roles in the corporation. Where such is the case, the director seeking indemnification is not required to prove the existence of a request relating specifically to his work as an officer and employee of the subsidiary. We hold that, as a matter of law, the request to serve as an officer and employee of a wholly-owned subsidiary is inferred from the director's election to the subsidiary's board. Therefore, VonFeldt may pursue indemnification for costs incurred in the MAH action, although the action implicated his conduct only as an officer and employee of SNC.

We decide only the case before us.[27] This decision speaks only to the facts of this case and similar cases where a parent corporation has elected the putative indemnitee to the board of a wholly-owned subsidiary. Other cases will have to be decided on their own facts concerning what constitutes one corporation's request to serve another corporation. Moreover, this decision does not perforate the limitations on inter-firm liability that are a *raison d'etre* of wholly-owned subsidiaries. Stifel Financial is liable in this case only because it voluntarily extended its indemnification duties to cover circumstances where indemnification is permissive by default. Section 145(a) does not oblige Delaware cor-

---

**26.** The Model Business Corporations Act is in accord. Section 8.50 of the MBCA contains "at the request of" language similar to what appears in 8 *Del.C.* § 145(a).

In the official comments to the Act, we find the following:

A special definition of "director" and "officer" is included in subchapter E to cover individuals who are made parties to proceedings because they are or were directors or officers or, while serving as directors or officers, also serve or served at the corporation's request in another capacity for another entity. The purpose of the latter part of this definition is to give directors and officers the benefits of the protection of this subchapter while serving at the corporation's request in a responsible position for employee benefit plans, trade associa-

tions, nonprofit or charitable entities, domestic or foreign entities, or other kinds of profit or nonprofit ventures. *To avoid misunderstanding, it is good practice from both the corporation's and director's or officer's viewpoint for this type of request to be evidenced by resolution, memorandum or other writing.*

Official Comment 2 to M.B.C.A.A.3d § 8.50 (emphasis added). The final sentence of the comment—and, in particular, its use of the phrase "good corporate practice"—strikes us as telling. The commenters suggest by negative implication that the statute does not require proof of an explicit communication between the parties, even though the failure to memorialize the request may not be good corporate practice.

**27.** *Paramount Communications Inc. v. QVC Network Inc.*, Del.Supr., 637 A.2d 34, 51 (1994).

porations to indemnify those who serve other enterprises at their request. If a corporation wishes not to extend indemnification rights to those who serve elsewhere at its request, it can say so in its bylaws, or it can say nothing at all, thereby achieving the same result.

### 2. The Contract Claim.

■ Neither Section 145 nor defendant's indemnification bylaw affords VonFeldt a right to advancement of his litigation expenses in the two pending actions.[28] Moreover, there is no claim properly before us that the statute or bylaw provides a right to reimbursement of expenses incurred in waging the current suit for indemnification.[29] Therefore, although we hold in VonFeldt's favor on his request for indemnification in the two completed actions, we still must review the Court of Chancery's finding that no separate contractual agreement existed between the parties.[30]

The trial court found no convincing evidence of a legally binding offer and acceptance, as it found nothing to corroborate VonFeldt's assertion that he had signed such an agreement. These findings are not clearly wrong. At trial, VonFeldt adduced only three pieces of evidence to prove the existence of an indemnification contract:

(1) His personal, subjective testimony that an agreement existed. (Of course, he admitted on cross-examination that he could not produce a signed version of the agreement, and indeed, that he could not even remember "seeing" a signed copy.)

(2) The statements in Stifel Financial's SEC filings reciting that Stifel Financial had indemnification agreements with "each" of its directors. (On the other hand, Stifel Financial explained that these statements were simply inaccurate. Stifel Financial pointed out that nobody who joined its board after June 1987 received an indemnification agreement, and that the statements were repeated in subsequent filings out of a failure to proofread carefully the firm's submissions to the SEC.)

(3) The behavior of Stifel Financial in advancing his attorneys' fees in connection with one of the four underlying actions, and thereafter directing him to select counsel approved by the firm. (But a corporation has discretion to make such advances under 8 *Del.C.* § 145(e). Therefore, a decision to advance attorney's fees does not necessarily corroborate the existence of an agreement.)

We agree with the Court of Chancery that each item of evidence adduced by VonFeldt either lacked credibility or was susceptible of an explanation consistent with Stifel Financial's claim that no agreement existed. The Court of Chancery simply weighed the credibility of the conflicting evidence and found in favor of defendant's factual claims. We defer to such decisions of the trial court.[31] We therefore affirm the finding of the Court of Chancery that no indemnification agreement existed between VonFeldt and Stifel Financial.

■ Likewise, we affirm the holding of the Court of Chancery that Stifel Financial is

---

**28.** *See Advanced Mining Sys.,* 623 A.2d at 84–85 (mandate to indemnify does not include duty to advance litigation expenses).

**29.** *See Mayer v. Executive Telecard, Ltd.,* Del.Ch., 705 A.2d 220, 221–24 (1997) (neither Section 145(c) nor bylaw mandating indemnification to full extent permitted by law allows recovery of fees incurred in enforcing indemnification rights). This Court, however, has not had occasion to decide whether Section 145 entitles an indemnitee to reimbursement of the costs incurred in bringing a successful suit for indemnification. VonFeldt raised this issue in the Court of Chancery and that court ruled against him, citing *Mayer.* He has on appeal, however, given

the matter only perfunctory attention. Thus, he has not fairly raised the issue and it is not properly before us at this time. *See* Supr., Ct.R. 8; *Turnbull v. Fink,* Del.Supr., 644 A.2d 1322, 1324 (1994) (appellant's opening brief must *"fully* state grounds for appeal, as well as the arguments and authorities on each issue or claim of reversible error") (emphasis in original). Therefore, we do not reach this issue and we express no opinion on the decision of the Court of Chancery in *Mayer.*

**30.** *See Mem.Op.* at 5.

**31.** *See Levitt,* 287 A.2d at 673.

not estopped from denying the existence of the agreement.[32] At trial, VonFeldt invoked both promissory and equitable estoppel. To succeed on a claim for promissory estoppel, plaintiff must prove that defendant made a promise with the intent to induce action or forbearance, that plaintiff actually relied on the promise, and that he suffered an injury as a result.[33] Equitable estoppel is based on similar principles. To make out a claim of equitable estoppel, plaintiff must show that he was induced to rely detrimentally on defendant's conduct.[34]

The Court of Chancery rejected VonFeldt's promissory estoppel claim on the rationale that the statements in Stifel Financial's public filings do not amount to a "promise" on which VonFeldt could rely. The court rejected his equitable estoppel claim on the ground that VonFeldt could not show that his being misled was not due to his own negligence.[35] Both of these findings are adequately supported by the record. The statements in the SEC submissions are merely descriptive and do not constitute assurances of future performance. And as an experienced businessman, VonFeldt should have taken some steps to confirm the existence of the indemnification agreement.

### Conclusion

We affirm the holding of the Court of Chancery that VonFeldt does not have an indemnification contract and is not entitled to advancement in the two pending actions. We find that his claim for reimbursement for costs incurred in bringing the present suit for indemnification is not properly before us. We reverse the judgment of the Court of Chancery insofar as that Court held that VonFeldt did not serve SNC at Stifel Finan-

cial's request. We therefore remand the case to the Court of Chancery for further proceedings consistent with this opinion.

---

**32.** *See Mem.Op.* at 6–7.

**33.** *Rabkin v. Philip A. Hunt Chem. Corp.,* Del.Ch., 480 A.2d 655, 661 (1984), *rev'd on other grounds,* Del.Supr., 498 A.2d 1099 (1985). On appeal, VonFeldt challenges the Court of Chancery's holding that a necessary element of promissory estoppel is a reasonable expectation on the part of the promisor to induce action or non-action on the part of the promisee. Because the Court of Chancery correctly found that VonFeldt failed to satisfy one of the admitted elements of promissory estoppel, it is not necessary for us to reach this question.

**34.** *Burge v. Fidelity Bond & Mortg. Co.,* Del. Supr., 648 A.2d 414, 420 (1994).

**35.** "For an estoppel claim to prevail, it must be shown that the party claiming estoppel lacked knowledge or the means of obtaining knowledge of the truth of the facts in question...." *Id.* at 420.