IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| THOMAS A. RIZK and JOHN A. DOUGLAS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 9073-ML |
| | ) | |
| TRACTMANAGER, INC., a Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

MASTER'S REPORT
(Cross-Motions for Summary Judgment)

Date Submitted: March 12, 2014
Final Report: May 30, 2014

Rudolf Koch, Esquire and A. Jacob Werrett, Esquire of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; OF COUNSEL: Peter R. Bray, Esquire of BRAY & BRAY, LLC, Parsippany, New Jersey; Andrew J. Levander, Esquire and David A. Kotler, Esquire of New York, New York; Attorneys for Plaintiffs.

Kenneth J. Nachbar, Esquire, Megan Ward Cascio, Esquire and Frank Martin, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL, LLP, Wilmington, Delaware; OF COUNSEL: Troy S. Brown, Esquire and Jeffrey A. Sturgeon, Esquire of MORGAN LEWIS & BOCKIUS, LLP, Philadelphia, PA 19103; Attorneys for Defendant.

LEGROW, Master

The advancement disputes that reach this Court often begin to take on a quality reminiscent of the late Harold Ramis's comedic masterpiece, "Groundhog Day." Although the arguments change slightly, and companies occasionally seize upon novel arguments to advance their ultimate goal of avoiding their contractual obligations, the plot rarely shifts: a company that granted its directors and officers broad indemnification and advancement rights in bylaws or employment agreements seeks to avoid the consequences of that promise when a director or officer is accused of serious wrongdoing that allegedly injured the company.

Such is the case here.[1] Although the defendant company argues that the plaintiffs – its former officers – are not entitled to advancement because the underlying litigation does not involve actions the plaintiffs took in their official corporate capacity, the company's briefs reveal its real position:  that Delaware's public policy "is contravened when advancement is provided to an individual who has undertaken serious financial wrongdoing and other misconduct to further his own interests, contrary to the best interests of the company."[2] This argument, of course, ignores one important procedural fact:  the plaintiffs have been accused of wrongdoing, but the underlying litigation is ongoing and the plaintiffs are entitled to defend themselves against those allegations with the benefit of the advancement rights granted by the company they served.  That result is wholly consistent with, and in fact required by, the public policy of this State, a

---

[1] "My years are not advancing as fast as you think."  "More coffee?"  "Keep it coming." GROUNDHOG DAY (Columbia Pictures 1993).
[2] Def.'s Opening Br. in Supp. of its Mot. for Summ. J. at 13.

conclusion repeatedly confirmed in decisions of this Court and the Delaware Supreme Court.

**BACKGROUND**

Except as noted, the background facts are not in dispute. As is typical in advancement cases, the parties steadfastly disagree about the truth of the factual allegations in the underlying litigation, but the plaintiffs' right to advancement does not turn on a resolution of those disputed facts, but rather on the contractual rights granted to the plaintiffs under the defendant's bylaws and application of those rights to the claims asserted in the underlying litigation.

**A. The Parties**

Thomas A. Rizk ("Rizk") founded the defendant TractManager, Inc. ("TMI" or the "Company") in 2000 and served as its CEO and a director of the Company until April 5, 2013. Rizk also served as an officer or director of several entities affiliated with TMI. John A. Douglas ("Douglas") served as TMI's Chief Information Officer ("CIO") from May 2011 until April 5, 2013. Rizk and Douglas are the plaintiffs ("Plaintiffs") in this advancement action. TMI is a Delaware corporation with its principal place of business in Saddle Brook, New Jersey. TMI provides contract management services in the healthcare industry and utilizes proprietary technology and applications developed by the Company.

**B. The Joint Venture**

In 2010, TMI began operating internationally through a joint venture (the "Joint Venture") with SCG Limitless International GP Inc. ("SCG"), whose members include

2

Rizk's son, Geoffrey Rizk ("Geoffrey"), Prince Emir Saud Bin Abdul Azziz Bin Majid Al Saud, and Celestino Diaz, a Venezuelan national. The Joint Venture was formed to explore business opportunities in certain foreign countries. TractManager International GP Inc. ("TMI International GP") is the managing general partner of the Joint Venture and is controlled by TMI. Rizk was the initial CEO of TMI International GP.

## C. Arsenal's Investment in TMI

In December 2012, Arsenal Capital Partners ("Arsenal") entered into a merger whereby Arsenal acquired majority ownership of TMI (the "Merger"). Arsenal is a private equity firm that invests in middle-market companies. After the Merger, TMI became wholly-owned by TractManager Holdings LLC ("Holdings"), in which Arsenal controls a majority stake. In connection with the Merger, some of TMI's stockholders sold their entire interest in the Company to Arsenal, while others – including Rizk – sold some of their stock but retained an investment in the Company when their interests were converted in the Merger into membership units of Holdings.

As a result of the Merger, Arsenal has the right to appoint three of TMI's four directors, with each Arsenal director having two votes. The minority stockholders designated Rizk as their representative on TMI's board of directors. The minority stockholders' board designee holds one vote.

## D. Plaintiffs' Termination from TMI

After the Merger, Rizk and Douglas continued in their positions as CEO and CIO, respectively, of TMI, and signed employment agreements with TMI dated December 19, 2012 (the "Employment Agreements"). In the litigation now pending in New Jersey,

3

TMI alleges that – shortly after taking control of the Company – the three directors appointed by Arsenal discovered "serious improprieties" in the Company's record-keeping and expenses, particularly relating to the Joint Venture.[3] TMI contends in the New Jersey litigation that the monthly expenses for the Joint Venture outpaced revenue by approximately 600%, and the Joint Venture's results were markedly different from the budget and projections provided to Arsenal in connection with the Merger negotiations.[4] Arsenal also learned through investigation and discussions with TMI employees that Geoffrey Rizk and his partners in SCG had been issued TMI credit cards and routinely incurred substantial charges on questionable activities, including tens of thousands of dollars incurred in a three-month period at restaurants, bars, and nightclubs in New York City, Las Vegas, Miami, and Park City, along with payments to an unknown woman.[5]

On April 5, 2013, at a telephonic meeting of TMI's board, TMI terminated Rizk and Douglas from their employment with the Company. TMI stated that the termination was "for cause, by reason of 'willful misconduct, acts of dishonesty, malfeasance and material breaches of [Rizk's and Douglas's] responsibilities to the company and its shareholders … .'"[6] TMI also required Rizk to resign as CEO of TractManager

---

[3] *Rizk v. Brown*, Answer, Separate Defenses and Countercls. of Defs. to the 2d. Am. Verified Compl. (hereinafter cited as "NJ Countercl."), Dkt. No. C-40-13, (N.J. Super. Ct. Ch. Div.), ¶ 42.
[4] *Id.* ¶ 42.
[5] *Id.* ¶¶ 43-45.
[6] *Id.* ¶ 51.

4

International GP, and there is a dispute between the parties about whether Rizk resigned from that position in a timely manner.[7]

### E. The First New Jersey Action

On April 10, 2013, Rizk, Douglas, and several other individuals and entities filed a complaint against TMI, its directors, and other individuals and entities in New Jersey state court (the "First New Jersey Action"). Among other things, the complaint in the First New Jersey Action alleges Rizk and Douglas improperly were terminated from TMI. On June 17, 2013, TMI and certain other defendants filed an answer to the second amended complaint in the New Jersey Action, along with a series of counterclaims against Rizk, Douglas, and the other plaintiffs (the "New Jersey Counterclaims").

In all, the New Jersey Counterclaims assert nine claims against various plaintiffs. As described above, TMI alleges that, after the Merger, the directors appointed by Arsenal discovered significant issues at the Company, primarily relating to the Joint Venture, including expenses that substantially outpaced revenue and a culture in which Geoffrey and some of his SCG associates lived an extravagant lifestyle largely financed by TMI. More significantly for purposes of this advancement action, the New Jersey Counterclaims allege that this pattern of Geoffrey and his associates incurring expenses on the Company's credit cards for costs unrelated to TMI's business was authorized and enabled by Rizk. TMI alleges Rizk directed that Company credit cards be issued to his son and his friends and told other TMI executives that Geoffrey was their boss and

---

[7] *See id.* ¶ 68.

5

"going against his wishes was a 'fireable offense.'"[8] TMI also alleges that Rizk improperly allocated to the Company expenses associated with the Joint Venture and required TMI employees to devote time to development efforts of the Joint Venture, in an effort to inflate artificially the Joint Venture's profits at the expense of TMI's domestic business.[9]

The New Jersey Counterclaims also describe what TMI contends was an intentional and concerted effort by Douglas and Rizk to destroy TMI's data. The New Jersey Counterclaims describe incidents in February and March 2013 in which Douglas – with the knowledge and support of Rizk – deleted e-mails from TMI's server, including deleting a specific e-mail chain regarding the allocation of expenses between TMI and the Joint Venture and removing all of Rizk's work e-mails from the server.[10] In early April 2013, George Brown, who is the President of TMI, Rizk's brother-in-law, and a "whistleblower" regarding Rizk's purported wrongdoing, allegedly received a call from Douglas in which Douglas stated that he was going to delete all of Brown's e-mails. The following day, TMI alleges, all of George Brown's e-mails were deleted.[11] In the New Jersey Counterclaims, TMI further alleges that Douglas "re-imaged" several company-issued computers in the hours leading up to and following the April 5, 2013 board meeting, causing all of the data on those computers to be deleted permanently.[12]

---

[8] *Id.* ¶¶ 44, 45(G).
[9] *Id.* ¶¶ 46-47.
[10] *Id.* ¶¶ 56-57.
[11] *Id.* ¶ 58.
[12] *Id.* ¶¶ 53-55.

The theme running through the New Jersey Counterclaims is that Rizk engaged in mismanagement and impropriety in connection with managing TMI and allocating expenses to the Company, and that Douglas and Rizk took affirmative steps to conceal this wrongdoing by deleting TMI's information, including e-mails, from the Company's computers and servers. The pleadings specifically allege that the financial improprieties and waste of resources occurred "with the express or tacit approval of [Rizk]," and that Douglas used his "superior access" as CIO to delete data.[13]

Counts I and II of the New Jersey Counterclaims are asserted against Rizk and Douglas, respectively, and allege that each of them breached their employment agreement with TMI by engaging in the various acts of wrongdoing described in the counterclaims, including the financial improprieties and destruction of data.[14] Counts I and II also allege that Rizk and Douglas breached their employment agreements by (i) violating the exclusive remedy provisions in the agreement by bringing the First New Jersey Action, (ii) refusing to return the Company's confidential and privileged information, (iii) disclosing the Company's confidential information, and (iv) as to Rizk, refusing to resign promptly from positions Rizk held with TMI-related entities.[15] Counts III and IV of the New Jersey Counterclaims allege that Risk and Douglas breached the covenant of good faith and fair dealing implied in their employment agreements by engaging in the wrongful acts alleged in the complaint.[16]

---

[13] *Id.* ¶¶ 48, 60.
[14] *Id.* ¶¶ 63, 72.
[15] *Id.* ¶¶ 64-68, 73-76.
[16] *Id.* ¶¶ 82-83, 88-89.

Counts V and VI are fiduciary duty claims against Rizk and Douglas that TMI concedes are subject to advancement, although it nevertheless refused the advancement demands made by Rizk and Douglas and – according to the record – has not advanced any of the fees and expenses Rizk and Douglas have incurred in connection with those claims. Finally, Counts VII, VIII, and IX are claims for replevin, conversion, and conspiracy. In those three counts, TMI alleges that Rizk, Douglas, and possibly others have possession of TMI's computer equipment and confidential and proprietary data, which they have refused to return.[17]

## F. The Second New Jersey Action

On May 28, 2013, several non-parties to this action filed a complaint against TMI and others in New Jersey state court (the "Second New Jersey Action"). Neither Rizk nor Douglas is a plaintiff in that action. On June 17, 2013, TMI and others filed a third party complaint (the "Third Party Complaint") against Rizk and several other individuals associated with the Joint Venture. The Third Party Complaint rehashes many of the same allegations of Rizk's and Douglas's wrongful conduct that are contained in the First New Jersey Action. Douglas, however, is not named as a defendant in the Third Party Complaint. The Second New Jersey Action alleges four third party claims against Rizk: fraud, conversion, and conspiracy to commit fraud and conversion. TMI does not dispute that the claims alleged against Rizk in the Third Party Complaint are subject to advancement under TMI's bylaws, although TMI has not advanced any of Rizk's fees or expenses in that action.

---

[17] *Id.* ¶¶ 101 - 117.

**G. The New York Action**

In addition to the two separate actions in New Jersey, TMI also separately filed on October 25, 2013 an action against Rizk and other principal stockholders of TMI who sold their interests in the Company to Arsenal in the Merger (the "New York Action"). The New York Action again recites much of the alleged wrongdoing attributed to Rizk in the two New Jersey actions, including the allegations regarding the expenses improperly incurred by Geoffrey and his associates and the improper allocation of the Joint Venture's expenses to TMI and misuse of TMI's resources and employees to prop up the Joint Venture.[18] The New York Action contains a single count of breach of contract claim stemming from alleged breaches of the representations made by TMI's selling shareholders in the Merger Agreement.

**H. The Plaintiffs' Demands for Advancement and TMI's Bylaws**

On September 4, 2013, Rizk and Douglas demanded advancement from TMI for the fees and expenses incurred in defense of the New Jersey Counterclaims, and Rizk demanded advancement for his fees and expenses incurred in defense of the Third Party Complaint.[19] Rizk and Douglas maintained they were entitled to advancement under TMI's bylaws, which provide:

> Each person who was or is made a party or is threatened to be made a party to or is otherwise involved … in any actual or threatened action, suit or proceeding … by reason of the fact that he or she is or was a director or officer of the Corporation or, while a director or officer of the Corporation,

---

[18] *TractManager, Inc. v. TM Holding, LLC*, (N.Y. Sup. Ct.), Compl. (hereinafter cited as "N.Y. Compl.") ¶¶ 22-29.

[19] *Rizk v. TractManager, Inc.*, C.A. No. 9073-ML, Verified Am. Compl. for Advancement (hereinafter cited as "Advancement Compl.") Exs. B, E.

is or was serving at the request of the Corporation as an employee or agent of the Corporation or as a director, officer, partner, member, trustee, administrator, employee or agent of another corporation or of a partnership, joint venture, limited liability company, trust or other enterprise, including service with respect to an employee benefit plan (an "indemnitee"), whether the basis of such proceeding is alleged action in an official capacity as a director or officer or in any official capacity as a director or officer, or in any other capacity while serving as a director or officer, shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the DGCL.

* * *

[I]n addition to the right to indemnification conferred herein, an indemnitee shall also have the right to be paid by the Corporation the expenses incurred in defending any such proceeding in advance of its final disposition (an "advance of expenses"); provided however, that if and to the extent that the DGCL requires, an advance of expenses incurred by an indemnitee in his or her capacity as a director or officer … shall be made only upon delivery to the Corporation of an undertaking[.][20]

The advancement demands submitted by Rizk and Douglas were accompanied by undertakings to repay TMI in the event of a final, non-appealable determination that the Plaintiffs were not entitled to indemnification in connection with the claims for which advancement was paid. TMI quickly rejected the demands, responding that advancement was neither permitted nor required under TMI's bylaws and 8 *Del. C.* § 145, because the claims against Rizk and Douglas "assert acts of bad faith … which were opposed to the best interests of [TMI]."[21] Rizk also demanded advancement for the fees incurred in connection with the claim asserted against him in the New York Action, a demand the Company also refused.[22]

---

[20] *Id*. Ex. H, Art. V, § 1.
[21] *Id*. Exs. C, F.
[22] *Id*. ¶ 16 & Ex. I;

10

## I. Procedural Background

Rizk and Douglas filed this advancement action on November 12, 2013, seeking advancement for the claims asserted against them in the New Jersey Counterclaims, along with advancement for Rizk for the claims asserted against him in the Third Party Complaint. The Plaintiffs also seek indemnification for the fees and expenses incurred in this action. The Plaintiffs amended their complaint on November 22, 2013 to add a claim for advancement of the fees and expenses incurred by Rizk in the New York Action.

The parties agreed to a stipulated scheduling order that permitted abbreviated discovery, after which the parties filed cross-motions for summary judgment.[23] Shortly after argument on the cross-motions, the parties advised the Court that TMI had filed an amended complaint in the New York Action and dismissed without prejudice its claims against Rizk.[24] Rizk argues that he now is entitled to indemnification for the New York Action, and is entitled to "fees on fees" for prosecuting his advancement claim relating to that action. TMI, however, maintains that the dismissal of Rizk from the New York Action has no bearing on this Court's analysis, and that Rizk is not now, and never has been, entitled to advancement or indemnification relating to that case.[25]

---

[23] Before the parties moved for summary judgment, the Plaintiffs moved for a protective order against discovery TMI sought into the Plaintiffs' bills in the underlying litigation. At the conclusion of argument on the motion for protective order, I issued a report recommending that the Court grant the Plaintiffs' motion, concluding that the Plaintiffs were not required to produce their bills in the underlying litigation until the Court reached a conclusion regarding the claims for which the Plaintiffs were entitled to advancement. *See Rizk v. TractManager, Inc.*, C.A. No. 9073-ML (Jan. 17, 2014) (TRANSCRIPT) at 37-41.

[24] Letter from Rudolf Koch, Esq. to the Court (Mar. 11, 2014), Exs. A, B.

[25] Letter from Kenneth J. Nachbar, Esq. to the Court (Mar. 12, 2014), at 1-2.

**ANALYSIS**

Where, as here, the parties file cross-motions for summary judgment, the Court may deem the motions to be the equivalent of a stipulation for decision based on the record submitted.[26] Advancement disputes routinely are resolved through summary judgment practice because the summary nature of the dispute allows the Court to resolve on a paper record issues that almost always depend on the terms of the bylaws and the nature of the pleadings in the underlying litigation.[27] Although the submission of cross-motions for summary judgment does not operate *per se* as a concession that no material facts are in dispute, the parties have not identified any factual issues that preclude an entry of judgment in this case, nor do any appear from my review of the record.

Although the briefing on the pending motions was extensive, the parties succeeded in narrowing the issues before the Court, largely because TMI conceded for the first time that the Plaintiffs were entitled to advancement for certain of the claims in the First New Jersey Action, and that Rizk is entitled to advancement for the entirety of the Second New Jersey Action, although those concessions are subject to a waiver defense discussed below. The issues that remain between the parties for purposes of the pending cross-motions are (1) the extent, if any, to which Douglas and Rizk are entitled to advancement for their defense of counterclaims I-IV and VII-IX in the First New Jersey Action, (2) whether Rizk is entitled to advancement for his defense of the New York Action, and (3)

---

[26] Ct. Ch. R. 56(h).

[27] *Sun-Times Media Gp., Inc. v. Black*, 954 A.2d 380, 388 (Del. Ch. 2008); *Senior Tour Players 207 Mgmt. Co. LLC v. Golftown 207 Holding Co. LLC*, 853 A.2d 124, 126-27 (Del. Ch. 2004); *Weinstock v. Lazard Debt Recovery Gp., LLC*, 2003 WL 21843254, at *2 (Del. Ch. Aug. 8, 2003).

12

whether the Plaintiffs waived their right to seek mandatory advancement from TMI by arguing in the First New Jersey Action that the advancement rights conferred by TMI's bylaws are discretionary.

## I.     The Scope of the Plaintiffs' Advancement Rights Generally

Section 145 of the Delaware General Corporation Law ("DGCL") allows – and at times requires – corporations to indemnify current and former officials for expenses they incur in actions brought against them in their official capacity.[28]  As the Delaware Supreme Court has explained,

> Section 145 serves the dual policies of:  (a) allowing corporate officials to resist unjustified lawsuits, secure in the knowledge that, if vindicated, the corporation will bear the expenses of litigation; and (b) encouraging capable women and men to serve as corporate directors and officers, secure in the knowledge that the corporation will absorb the costs of defending their honesty and integrity.[29]

Advancement, which is an "important corollary" to indemnification, furthers those purposes by attracting capable individuals to serve corporations, secure in the knowledge that the corporation will provide "immediate interim relief" by advancing the fees and costs the official may incur in connection with investigations or legal proceedings.[30]

Although the authority conferred on corporations to advance expenses is permissive under Section 145(e), a corporation may make the right to advancement mandatory through its charter or bylaws.[31]  As many corporations do, TMI's bylaws provided mandatory advancement rights to its directors and officers, a point TMI

---

[28] 8 *Del. C.* § 145(a)-(c).
[29] *VonFeldt v. Stifel Fin. Corp.*, 714 A.2d 79, 84-85 (Del. 1998).
[30] *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 211 (Del. 2005).
[31] *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 823 (Del. 1992).

concedes. By using the word "shall," and assuming an obligation to advance fees and expenses incurred by an officer or director, TMI also undertook the burden of proving that mandatory advancement is not required in a particular case.[32]

TMI's bylaws require the company to indemnify "each person who was or is made a party to … any actual or threatened action, suit or proceeding … by reason of the fact that he or she is or was a director or officer of the Corporation … (an "indemnitee")," and confers upon an indemnitee "the right to be paid by the Corporation the expenses incurred in defending any such proceeding in advance of its final disposition," subject only to a requirement that the indemnitee deliver an undertaking to the corporation if required by the DGCL.[33] The meaning of this "by reason of the fact" standard is by now well-worn; several decisions of both this Court and the Delaware Supreme Court explain that a proceeding is "by reason of the fact" that one was a corporate officer if there is a nexus or causal connection between the underlying proceeding and one's official capacity, "without regard to one's motivation for engaging in that conduct."[34] The necessary causal connection is established if the corporate powers were used or necessary for the commission of the alleged misconduct, even if the cause of action does not specify

---

[32] *See VonFeldt v. Stifel Fin. Corp.*, 1999 WL 413393, at *3 (Del. Ch. Jun. 11, 1999). Although *VonFeldt* was decided in the context of a mandatory indemnification provision, rather than a mandatory advancement provision, the Court's reasoning applies with equal force to an advancement dispute. *See id.* ("By using the mandatory word "shall" in the indemnification bylaw, [the corporation] has contractually agreed to indemnify persons covered by the bylaw … . To overcome this self-imposed, mandatory obligation on [the corporation's] part, [the corporation] must demonstrate to this Court why it should not be required to indemnify [the corporate official]."). *See also Paolino v. Mace Security Int'l, Inc.*, 985 A.2d 392, 407 (Del. Ch. 2009).

[33] Advancement Compl. Ex. H, Art. V, § 1.

[34] *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 214 (Del. 2005); *Danenberg v. Fitracks, Inc.*, 2012 WL 11220, at *5 (Del. Ch. Jan. 3, 2012).

14

a claim for breach of fiduciary duty.[35]  The "by reason of the fact" standard is interpreted broadly and in favor of advancement in order to further the goals of Section 145.[36]

## II.    The First New Jersey Action

The Plaintiffs contend that they are entitled to advancement for all of the counterclaims asserted against them in the First New Jersey Action, not just counts V and VI, which are styled as breach of fiduciary duty claims.  TMI disagrees, arguing that counts I-IV and VII-IX are claims that arise from actions the Plaintiffs allegedly took in their personal capacity, separate from their duties as officers or a director of the Company.

To recap, counts I and II allege that Rizk and Douglas breached their employment contracts by refusing to return company property and e-mails, disclosing confidential company documents, and violating the exclusive remedy provisions of their employment agreements.[37]  Count I also alleges that Rizk violated his employment agreement by refusing to resign promptly from certain positions he held with TMI-related entities.[38]  In counts III and IV, TMI alleges that Rizk and Douglas breached the covenant of good faith and fair dealing in their employment agreements by failing to act in good faith under the agreement, damaging the business interests of TMI, and causing the expenditure of funds

---

[35] *Zaman v. Amadeo Holdings, Inc.*, 2008 WL 2168397, at *17 (Del. Ch. May 23, 2008); *Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1011 (Del. Ch. 2007).

[36] *Underbrink v. Warrior Energy Servs. Corp.*, 2008 WL 2262316, at *6-7 (Del. Ch. May 30, 2008).

[37] NJ Countercl. ¶¶ 64-67, 73-76.

[38] *Id*. ¶ 68.

in bad faith.[39] Although these allegations appear to implicate the Plaintiffs' conduct as officers of TMI, the Company argues that the claims were brought against the Plaintiffs "in their personal capacity as employees under a contract, rather than 'by reason of the fact' that they were officers and a director, which status is completely incidental."[40] To support its contention that these claims must be purely employment-related claims divorced from the Plaintiffs' official capacity, TMI argues that the Plaintiffs could have engaged in this conduct even if they were not officers or a director of the Company, offering the rather unremarkable truth that "[a]n employee need not be an officer or director of a company to steal company property, disclose confidential documents or violate provisions in contracts."[41]

Although this Court has recognized that the "by reason of the fact" standard should not be construed so as to draw within its ambit every claim brought against an officer or director,[42] a corporation seeking to avoid advancement on the basis that the underlying litigation arises solely from terms of an employment agreement must show that the claims "clearly involve a specific and limited contractual obligation *without any nexus or causal connection to official duties*."[43] This Court's decision in *Paolino v. Mace Security International, Inc.* provides a detailed summary of the cases that delineate the line between a narrow employment-related claim that does not implicate an officer's official duties, and a broader contractual claim that bears the necessary causal connection

---

[39] *Id*. ¶¶ 82-83, 88-89.
[40] Def.'s Opening Br. in Support of its Mot. for Summ. J. at 17.
[41] *Id*. at 18.
[42] *See Weaver v. Zenimax Media, Inc.*, 2004 WL 243163, at *3 (Del. Ch. Jan. 30, 2004).
[43] *Paolino v. Mace Security Int'l, Inc.*, 985 A.2d 392, 407 (Del. Ch. 2009) (emphasis added).

16

to those duties. For example, this Court has concluded that former officers are not entitled to advancement for claims alleging that they received employment benefits inconsistent with the terms of their contracts.[44] In contrast, this Court has awarded advancement when an official ostensibly is sued for violating his employment agreement but where (1) the conduct at issue was identical to conduct alleged to be a breach of fiduciary duty,[45] or (2) the contractual claims are grounded in an official's alleged misuse of the substantial fiduciary responsibility he was given.[46] In *Paolino*, the Court concluded that this line of cases shows that advancement rights do not arise "when the parties are litigating a specific and personal contractual obligation that does not involve the exercise of judgment, discretion, or decision-making authority on behalf of the corporation."[47] To determine on which side of the line the New Jersey Counterclaims fall, I must read the claims as a whole and interpret the substance of the allegations in each count.[48]

TMI cites no authority in support of its argument that this inquiry should turn on whether a non-officer employee could engage in the wrongdoing alleged in the complaint, and such a rule appears inconsistent with the summary nature of advancement proceedings and the record typically considered by the Court in resolving these disputes. In fact, adopting TMI's proposed rule would place a narrow reading on the "by reason of the fact" standard, a standard this Court consistently interprets broadly and in favor of

---

[44] *Weaver*, 2004 WL 243163, at *3.
[45] *Reddy v. Electronic Data Sys. Corp.*, 2002 WL 1358761, at *7 (Del. Ch. Jun. 18, 2002).
[46] *Zaman v. Amedeo Holdings, Inc.*, 2008 WL 2168397, at *28 (Del. Ch. May 23, 2008).
[47] 985 A.2d at 403.
[48] *Weaver*, 2004 WL 243163, at *4.

17

advancement.[49] TMI's argument, if accepted, would create an artificial distinction in which advancement was dependent on whether the conduct at issue in the underlying complaint was conduct in which *only* an officer could engage, requiring the Court to undertake fact-finding outside the limited inquiry typically involved in an advancement dispute.[50] This distinction is particularly ill-fitted in this case, where the Plaintiffs' only positions with TMI were as officers or – in the case of Mr. Rizk – a director. TMI does not explain why this Court should shift its focus from the capacity in which a plaintiff actually served to consider whether a hypothetical non-officer employee could have engaged in the same conduct. The argument appears to be one designed to achieve a particular result, without regard for its consistency with settled practice or Delaware law or policy.

Even if TMI's argument had merit, however, it would not succeed in this case, because a careful reading of the New Jersey Counterclaims shows that TMI alleges that the Plaintiffs' unique positions as officers allowed them to engage in the alleged wrongdoing. For example, the counterclaims charge that the Plaintiffs "caused" the expenditure of funds in bad faith, an action that appears to implicate their authority as officers. The counterclaims also allege that Douglas, in his capacity as CIO, has superior access to TMI's servers, enabling him to delete and move e-mails, and that Rizk directed Douglas to undertake those actions.[51]

---

[49] *Underbrink v. Warrior Energy Servs. Corp.*, 2008 WL 2262316, at *6-7 (Del. Ch. May 30, 2008).

[50] *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 213 (Del. 2005).

[51] NJ Countercl. ¶¶ 57, 60.

Reading the claims as a whole, I cannot conclude that counts I-IV solely implicate personal contractual obligations that do not involve the exercise of the Plaintiffs' judgment, discretion, or decision-making authority as officers. To the contrary, those claims allege that the Plaintiffs injured the company by failing to act fairly and in good faith, including by authorizing improper expenditures of Company funds, disclosing confidential company information, and refusing to return Company property and data. I acknowledge that counts I and II of the counterclaims also allege that the Plaintiffs violated the exclusive remedy provision in their employment agreements by bringing claims against the Company and participating in the First New Jersey Action, allegations that appear to involve limited, personal obligations in the employment agreements, The Company, however, chose to combine those allegations with allegations implicating the Plaintiffs' conduct in their official capacity, and TMI therefore is obligated to advance all of the Plaintiffs' fees and expenses relating to those counts.[52]

The Plaintiffs also are entitled to advancement for counts VII-IX of the New Jersey Counterclaims. These counts – for conversion, replevin, and conspiracy – are based on allegations that the Plaintiffs are in possession of TMI's equipment and data, have refused to return the same, and that the data contains highly confidential and

---

[52] *See Danenberg v. Fitracks, Inc.*, 2012 WL 11220, at *6 (Del. Ch. Jan. 3, 2012) ("[i]t is not possible at this stage to parse between pre- and post-merger representations or among causes of action such that a lesser allocation would be appropriate.") TMI is the master of its own pleadings and elected to combine allegations bearing a causal connection to the Plaintiffs' conduct as officers with allegations involving a limited contractual obligation in the employment agreement. It does not appear equitable or efficient to force the Plaintiffs' counsel defending those counterclaims to artificially segregate their time between various allegations within a particular count. In a later dispute over indemnification, TMI may argue that it is entitled to recover a portion of the advancement from the Plaintiffs. *See id.*

19

sensitive information belonging to TMI and its clients.[53] TMI here reprises its argument that the "'true basis' of [these] claims is entirely disconnected from [the Plaintiffs'] capacities as officers or a director," because the Plaintiffs' access to the equipment and data, and their obligations not to steal it, were "due to their status as employees of TMI."[54] As set forth above, that argument is unconvincing, both because it is inconsistent with settled Delaware law applying the "by reason of the fact" standard, and because the Plaintiffs' only employment with TMI was in their capacity as officers. It necessarily follows that it was in that capacity that the Plaintiffs obtained the data and equipment at issue in these claims. Although the alleged wrongful retention of the equipment and data did not occur until after the Plaintiffs were terminated from TMI, the claims bear a causal connection to the Plaintiffs' official capacity, because it was in that capacity that they had access to the equipment and data.[55]

## III. The New York Action

TMI's argument that Rizk cannot obtain advancement for his defense of the New York Action carries more persuasive force because it is based on the argument that Rizk is being sued in his capacity as a seller for representations the selling stockholders made in the Merger Agreement. TMI argues that Rizk and several other sellers named as defendants in the New York Action made a series of representations and warranties in the

---

[53] NJ Countercl. ¶¶ 101-117.

[54] Def.'s Opening Br. in Support of its Mot. for Summ. J. at 20-21.

[55] *See Brown v. LiveOps, Inc.*, 903 A.2d 324, 328-30 (Del. Ch. 2006) (concluding that claims against a former official for allegedly misappropriating the company's confidential and proprietary information directly arose out of his former position because the claims alleged that the official gained access to the information while serving as an officer of the company).

Merger Agreement, placed money and equity in escrow to cover "potential indemnification liabilities" associated with breaches of those representations and warranties, and that those escrowed funds are the subject of the breach of contract claim filed in the New York Action.[56] TMI contends it would be "nonsensical" to require the company to advance to Rizk the fees he incurs in defense of the breach of contract claim, while the other sellers are forced to fund their own defense.[57] Rizk, on the other hand, argues that the "crux" of the New York Action is the allegation that Rizk, in his capacity as CEO, caused the Company to incur improper expenses and wrongfully diverted personnel for his own personal benefit, and that those actions were outside the ordinary course of business and inconsistent with the representations made by the sellers in the Merger Agreement.[58] In other words, TMI argues that the claim in the New York Action is not subject to advancement because Rizk is being sued in his capacity as a seller, while Rizk argues that the claim is subject to advancement because it requires him to defend his conduct as an officer and director. Although I believe Rizk has the better argument, this is concededly a thorny issue that turns on the particular facts of this case.

Although TMI correctly points out that Rizk is being sued for representations he made as a seller in the Merger Agreement, it is inescapable that the claim in the New York Action inextricably is intertwined with actions Rizk allegedly took in his capacity as CEO of TMI. Much like the New Jersey actions, the complaint in the New York Action alleges that Rizk incurred, and permitted Geoffrey and his associates to incur,

---

[56] Def.'s Opening Br. in Support of its Mot. for Summ. J. at 15.
[57] *Id*. at 16.
[58] Pls.'s Answering Br. in Opp. to Def.'s Mot. for Summ. J. at 14.

inappropriate expenses that were charged to TMI, and that Rizk improperly directed TMI resources and personnel to the Joint Venture, at the expense of TMI's domestic business.[59] Although TMI argues these contentions are mere "background facts" divorced from the claim in the New York Action, that argument cannot be squared with the operative complaint, which later alleges that the diversion of resources and personnel for the personal benefit of Rizk and his son and associates, and for the benefit of the Joint Venture, was "outside of the ordinary course of business and inconsistent with the representations, warranties, and covenants in the Merger Agreement."[60] Although Rizk was sued for representations he made as a seller, these allegations regarding Rizk's conduct as CEO create the necessary causal connection between the New York Action and Rizk's official capacity.[61] That conclusion also is compelled by a cursory analysis of the defense Rizk must make in order to prevail in the New York Action: that defense necessarily will require Rizk to defend his actions as CEO, and possibly disprove the

---

[59] N.Y. Compl. ¶¶ 23-28.

[60] *Id.* ¶ 42.

[61] In *Danenberg v. Fitracks, Inc.*, 2012 WL 11220 (Del. Ch. Jan. 3, 2012), this Court held that the former CEO of the defendant corporation was entitled to advancement for claims brought against him arising from representations the CEO made during merger negotiations. The CEO also was the selling shareholder in the merger. Rizk relies on *Danenberg* to support his argument that the representations underlying the breach of contract claim in the New York Action were made in Rizk's official capacity. TMI seeks to distinguish *Danenberg* on the basis that the claims the corporation alleged against the former CEO were for fraud and conspiracy, rather than breach of contract. Although I disagree that *Danenberg* can be distinguished on that basis, it also is not clear that *Danenberg* can be read as broadly as Rizk contends, because that case arguably turns on certain unique facts, particularly the fact that the former CEO apparently made these representations over the course of a number of years and regarding technology the CEO then was developing in his official capacity. *See id.* at *6. In any event, because I find that there is a nexus between the allegations in the New York Action and Rizk's official capacity, requiring Rizk to defend his conduct as CEO, my conclusions do not turn on an application or extension of *Danenberg*.

allegations that he acted improperly in that capacity.[62]  A finding that Rizk's defense of the claim in the New York Action bears a causal connection to his actions as TMI's CEO is consistent with, and supported by, the broad interpretation this Court gives the "by reason of the fact" standard in order to effectuate the policies underlying Section 145, including the policy of "encouraging capable women and men to serve as corporate directors and officers, secure in the knowledge that the corporation will absorb the costs of *defending their honesty and integrity*."[63]

Finally, I must consider whether TMI's decision to dismiss Rizk from the New York Action moots his request for advancement relating to that claim.  Notably, TMI did not raise that mootness argument and instead specifically argued that "the dismissal of the claim against Rizk has no bearing on the Court's resolution of the matters" before it.[64] There is some precedent to support the conclusion that it would be inequitable to deny advancement to a corporate official, and force the corporate official to pursue a separate action for indemnification, simply because the claims against the official were dismissed while the advancement action was pending.[65]  Because TMI has expressly disclaimed any argument that the dismissal affects this advancement proceeding, and because previous decisions of this Court have allowed advancement despite the resolution of the

---

[62] *See Imbert v. LCM Interest Holding LLC*, C.A. No. 7845-VCL (Del. Ch. Jun. 24, 2013) (TRANSCRIPT) at 22-24 (considering the defenses raised to a claim in determining whether a claim carried a nexus to official capacity).

[63] *VonFeldt v. Stifel Fin. Corp.*, 714 A.2d 79, 84-85 (Del. 1998) (emphasis added).

[64] Letter to the Court from Kenneth J. Nachbar, Esq. at 1.

[65] *See Underbrink v. Warrior Energy Servs. Corp.*, 2008 WL 2262316, at *15 (Del. Ch. May 30, 2008).  *But see Haseotes v. Cumberland Farms, Inc.*, C.A. No. 14921 (Del. Ch. July 23, 1996) (TRANSCRIPT) at 5-8 (refusing to order advancement where the plaintiff waited eight months before demanding advancement, the underlying claim had been adjudicated, and the claim ultimately may not have been indemnifiable).

underlying litigation, at least where the underlying litigation was resolved in the official's favor, I do not believe that equity favors dismissing Rizk's advancement claim as moot.

## IV. TMI's Waiver Argument

In a final bid to avoid the contractual obligations the company undertook in its bylaws, TMI unconvincingly argues that the Plaintiffs waived their right to mandatory advancement by arguing in the First New Jersey Action – in a brief to support their motion to disqualify the New Jersey defendants' counsel and litigation consultant – that the advancement rights conferred in TMI's bylaws are discretionary, rather than mandatory.[66] Because TMI cannot meet the "exacting" standards to demonstrate waiver, this defense should be rejected.

A waiver is a "voluntary and intentional relinquishment of a known right."[67] The doctrine rests on the equitable principle that a person who takes a position with full knowledge of his rights should not be permitted to later act in a manner inconsistent with that position.[68] The Supreme Court has described the standards for demonstrating waiver as "quite exacting," requiring proof that (1) there is a requirement or condition capable of being waived, (2) the waiving party knows of that requirement or condition, and (3) the waiving party intends to waive that requirement or condition.[69]

As a preliminary matter, at the time the Plaintiffs filed their reply brief in the New Jersey Action, it is not clear that they were aware that TMI would be asserting

---

[66] Transmittal Aff. of Frank R. Martin, Esq. (hereinafter "Martin Aff.")., Ex. 46, p. 21-22.
[67] *Realty Growth Inv. v. Council of First Unit Owners*, 43 A.2d 450, 456 (Del. 1982).
[68] *In re Givans Estate*, 1993 WL 50316 (Del. Ch. Feb. 1, 1993).
[69] *Amirsaleh v. Bd. of Trade of the City of New York, Inc.*, 27 A.3d 522, 529-30 (Del. 2011).

24

counterclaims against them in their official capacities.[70] Assuming, however, that the Plaintiffs had full knowledge of the nature of the claims TMI intended to bring against them in New Jersey, TMI has not established that the Plaintiffs knew of their mandatory advancement rights at the time they argued to the New Jersey court that advancement rights were discretionary, or that the Plaintiffs intended to waive those rights. In fact, a cursory reading of the brief on which TMI relies suggests that Plaintiffs' New Jersey counsel entirely misunderstood Section 145 and Delaware law respecting advancement.[71] Because the limited record before the Court shows that the Plaintiffs were not aware of their mandatory advancement rights, TMI cannot provide "unequivocal" evidence of either the Plaintiffs' knowledge of their rights or their intent to waive them.[72]

## V.    Apportionment

Resolving the claims for which the Plaintiffs are entitled to advancement unfortunately only resolves a portion of the issues between the parties. It appears likely, based on the course of this litigation to date, that future disputes may arise regarding the particular fees and expenses for which the Plaintiffs, especially Rizk, seek advancement, because Rizk and Douglas also are pursuing claims against TMI in the First New Jersey Action, and are not entitled to advancement for those claims. Several of the parties in the

---

[70] It appears from the record that the counterclaims in the New Jersey action were filed on the same day as the reply brief that TMI relies upon to support its waiver argument.

[71] *Compare* Martin Aff. Ex. 46, p. 22 (citing 8 *Del. C.* § 141(d)(3) [sic] for the proposition that "if no directors can approve a request for advancement, the determination can be made 'by independent legal counsel in a written opinion'") *with Havens v. Attar*, 1997 WL 55957, at *14 & n. 58 (holding that the procedural limitations in Section 145(d) do not apply to a decision to advance expenses).

[72] *See Amirsaleh*, 27 A.3d at 529 ("the facts relied upon to demonstrate waiver must be unequivocal").

25

First New Jersey Action also may be represented by the same counsel. As a result, once the Court determines whether to adopt the recommendations in this report, the Plaintiffs and TMI should confer regarding a procedure to govern the submission of advancement requests to TMI and the resolution of any disputes regarding apportionment or the reasonableness of the fees and expenses. Other than a brief discussion during oral argument, the parties do not appear to have discussed at length any such procedure.

## VI. Fees on Fees

The Plaintiffs also seek indemnification, or "fees on fees," for the expenses they incurred in enforcing their advancement rights in this action. TMI does not dispute that the Plaintiffs are entitled to indemnification, but correctly argues that the Plaintiffs only are entitled to indemnification proportionate to their success in this case. Because it appears likely that the parties will incur additional costs associated with resolving the apportionment between fees that are subject to advancement and those that are not, and because the Plaintiffs only are entitled to indemnification consistent with the level of success they achieve in this action, I will defer resolving the amount of any indemnification award until the completion of this case.[73] To the extent it assists the parties in resolving any future "fees on fees" dispute in this case, I note that Plaintiffs have been entirely successful in the proceedings up to this point, and therefore likely are entitled to indemnification for all of their fees incurred to date.

---

[73] *See Weinstock v. Lazard Debt Recovery GP, LLC*, 2003 WL 21843254, at *7 (Del. Ch. Aug. 8, 2003).

## VII.  Interest

The Plaintiffs seek pre- and post-judgment interest on the fees and expenses they have incurred in the various actions for which the Court determines the Plaintiffs are entitled to advancement.  TMI does not dispute the Plaintiffs' right to interest, aside from pointing out that the Plaintiffs are not entitled to interest on any claims for which the Court determines there is no right to advancement.[74]  The Plaintiffs are entitled to pre-judgment interest for expenses incurred before they demanded advancement, with interest accruing ten days after the date the relevant advancement demand and undertaking were delivered to TMI.  Pre-judgment interest on fees and expenses incurred after that date should accrue from the date the expenses were paid.  The Plaintiffs also are entitled to post-judgment interest, compounded quarterly, at the legal rate under 6 *Del. C.* § 2301.[75]

---

[74] Def's. Answering Br. in Opp. to Pls.'s Mot. for Summ. J. at 24.

[75] *Underbrink v. Warrior Energy Servs. Corp*, 2008 WL 2262316, at *19 (Del. Ch. May 30, 2008).

**CONCLUSION**

For the foregoing reasons, I recommend the Court find that (i) Douglas is entitled to advancement for all the counterclaims asserted against him in the First New Jersey Action, (ii) Rizk is entitled to advancement for all the claims asserted against him in the First New Jersey Action, the Second New Jersey Action, and the New York Action, and (iii) the Plaintiffs have not waived their right to advancement.  This is my final report and exceptions may be taken in accordance with Rule 144.

Respectfully submitted,

/s/ *Abigail M. LeGrow*
Master in Chancery