# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

MARK S. DAVIS and
ROBERT P. BROOK,

          Plaintiffs,

          v.

EMSI HOLDING COMPANY,

          Defendant.

:
:
:
:
:
:
:
:
:
:
:
:

**C.A. No. 12854-VCS**

## MEMORANDUM OPINION

Date Submitted: February 8, 2017
Date Decided: May 3, 2017

Philip Trainer, Jr., Esquire and Toni-Ann Platia, Esquire of Ashby & Geddes, Wilmington, Delaware; Lisa C. Solbakken, Esquire of Arkin Solbakken LLP, New York, New York; and Timothy D. Kelly, Esquire of Dykema Gossett, PLLC, Minneapolis, Minnesota, Attorneys for Plaintiffs.

S. Mark Hurd, Esquire, Ryan D. Stottmann, Esquire, and Lauren K. Neal, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware and Stephen C. Hackney, Esquire and Timothy Knapp, Esquire of Kirkland & Ellis LLP, Chicago, Illinois, Attorneys for Defendant.

**SLIGHTS, Vice Chancellor**

In this advancement action, two former directors and officers of a recently acquired corporation, EMSI Holding Company ("EMSI" or the "Company"), seek payment of attorney's fees and expenses they have incurred, and will incur, in defending themselves in a separate action pending before this Court. In the underlying action, the Plaintiffs here and others have been sued for indemnification arising out of allegedly fraudulent misrepresentations they made in a Stock Purchase Agreement (the "SPA"). Plaintiffs have made a demand for advancement. Defendant has refused that demand and argues that Plaintiffs waived their right to advancement in the SPA by agreeing that contractual indemnification was the only remedy that would survive the closing of the transaction. Alternatively, Defendant contends that Plaintiffs' right to advancement was not clearly established prior to the SPA and, in any event, Plaintiffs have not been sued by reason of the fact that they were directors or officers of the Company.

In this opinion, I grant Plaintiffs' motion for summary judgment on their claims for mandatory advancement and fees on fees. I do so because the SPA clearly preserves Plaintiffs' preexisting right to advancement and the claims they are defending in the underlying indemnification action arise by reason of the fact they were directors or officers of EMSI. None of Defendant's arguments to the contrary survive construction of the clear and unambiguous terms of the SPA and the applicable governance documents.

1

## I.    BACKGROUND

Plaintiffs have moved for summary judgment in advance of discovery arguing that the complaint in the underlying indemnification action, the clear terms of the SPA and the clear terms of the applicable corporate bylaws demonstrate that they are entitled to advancement as a matter of law.  Defendant has sought to expand the record under Court of Chancery Rule 56(f).  As will be discussed below, I am satisfied that the facts that can be drawn from the pleadings in the underlying indemnification action and the operative documents reveal that Plaintiffs' motion is well-grounded as is the relief they seek here.[1]

### A. The Parties and Relevant Non-Parties

Plaintiffs, Mark S. Davis and Robert P. Brook, are former directors and officers of EMSI.  Davis was President, CEO and Chairman of the board of directors.  Brook was a director and Executive Vice President of EMSI and President of its HealthCare Division.

Defendant, EMSI, is a Delaware corporation.  Non-party EMSI Acquisition, Inc. (the "Buyer") is a Delaware corporation that acquired EMSI through the SPA

---

[1] *Weinstock v. Lazard Debt Recovery GP, LLC*, 2003 WL 21843254, at *2 (Del. Ch. Aug. 8, 2003) (deciding motion for summary judgment in advancement case based on underlying complaint and applicable corporate documents).

(the "Acquisition") and subsequently sued Plaintiffs in the underlying action for fraud in connection with that transaction.

## B. The Underlying Action

The factual allegations of the underlying action are complex. A thorough discussion of these facts appears in the Court's opinion on defendants' motion to dismiss that action which has been issued simultaneously with this opinion.[2] An abridged version will suffice to provide context to Plaintiffs' demands for advancement.

Plaintiffs and others have been sued by the Buyer for indemnification and to confirm a Settlement Auditor's award related to post-closing net working capital and revenue adjustments. The Buyer bases its claim for indemnification on what it alleges was a multi-faceted accounting fraud that arose in connection with the Acquisition. Essentially, the Buyer avers that, in an effort to keep the Buyer engaged in the sales process and to extract from the Buyer more than EMSI was actually worth, EMSI fraudulently inflated financial statements in order to hide the effects of a dramatic slowdown in revenue and profitability that it experienced in the ramp up to closing of the Acquisition. To accomplish this complex and brazen fraud, EMSI purportedly engaged in a variety of different types of financial manipulation that

_____

[2] *EMSI Acq., Inc. v. Contrarian Funds, LLC*, C.A. No. 12648-VCS (Del. Ch. May 3, 2017).

3

created over $4.6 million of fabricated EBITDA. The Buyer alleges that Davis and

Brook knowingly participated in this financial fraud through their positions at EMSI.

Damages to the Buyer are alleged to be approximately $40 million.

## C. The Company's Bylaws and the Relevant Provisions of the SPA

The documents that are relevant to resolving the dispute over Plaintiffs' right

to advancement are the EMSI Holding Company bylaws and the SPA. To begin,

Section 7.1 of the bylaws states, in relevant part:

> Each person who was or is made a party or is threatened to be made a party to or otherwise is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (a "Proceeding"), by reason of being or having been a director or officer of the Corporation or serving or having served at the request of the Corporation as a director, trustee, officer, employee or agent of another corporation . . . whether the basis of such proceeding is alleged action or failure to act in an official capacity as a director, trustee, officer, employee or agent or in any other capacity while serving as a director, trustee, officer, employee or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the DGCL . . . against all expense, liability and loss (including attorneys' fees, judgements, fines, ERISA excise taxes or penalties and amounts paid in settlement) reasonably incurred or suffered by such Indemnitee in connection therewith . . . . The right to indemnification conferred in this Article VII shall be a contract right and shall include the right to be paid by the Corporation the expenses (including attorneys' fees) incurred in defending any such Proceeding in advance of its final disposition (an "Advancement of Expenses"); provided, however, that, if the DGCL so requires, an Advancement of Expenses incurred by an Indemnitee shall be made only upon delivery to the Corporation of an undertaking (an "Undertaking"), by or on behalf of such Indemnitee, to repay all amounts so advanced if it shall ultimately be determined by final judicial decision from which there is no further right to appeal (a

4

"Final Adjudication") that such Indemnitee is not entitled to be indemnified for such expenses under this Article VII or otherwise.[3]

In connection with the Acquisition, Plaintiffs and others agreed to release certain claims they may have possessed against the Company. Specifically, Section 6.5 of the SPA states, in relevant part:

> Effective immediately following the Closing, the Sellers, on their own and on behalf of their respective Affiliates . . . (collectively, the "<u>Releasing Parties</u>") hereby completely, unconditionally, and irrevocably forever release, waive, and discharge, and shall be forever precluded from asserting, any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities, of any kind or nature . . . then existing in law, equity, or otherwise, that the Releasing Parties has, had, or may have against the EMSI Entities, Buyer and the Receiving Party . . . (collectively, the "<u>Released Parties</u>") . . .[4]

Section 6.5 also contains certain carve-out language with respect to the Release:

> Nothing contained in this <u>Section 6.5</u> shall (a) affect any right to indemnification that any Releasing Party has, in his or her capacity as an officer or director (or former officer or director), under the Governing Documents of the applicable EMSI Entity . . .[5]

The proper construction of these provisions, and how they fit together either to preserve Plaintiffs' right to advancement or to waive that right, is at the heart of this dispute.

---

[3] Transmittal Aff. of Toni-Ann Platia in Supp. of Pls.' Mot for Summ. J. ("Platia Aff.") Ex. A ("EMSI Holding Bylaws") § 7.1.

[4] Platia Aff. Ex. B ("SPA") § 6.5.

[5] SPA § 6.5.

5

## D. Procedural History

The Buyer commenced the underlying action on August 10, 2016. Defendants filed a motion to dismiss that action which was, by separate opinion and order issued today, denied. Plaintiffs filed their Verified Complaint (the "Complaint") for advancement on October 27, 2016. On November 23, 2016, Plaintiffs filed their motion for summary judgment.

## II.    ANALYSIS

Defendant contends that, through their request for advancement, Plaintiffs are attempting an end-run around the heavily negotiated provisions of the SPA. Defendant makes two principal arguments in support of this contention. *First*, Plaintiffs expressly waived their advancement rights in the SPA. *Second*, even if Plaintiffs did not waive their right to advancement in all instances, they have nevertheless failed to preserve that right for claims that arise under the SPA. Defendant also insists that, regardless of the terms of the SPA, Plaintiffs are not entitled to advancement because none of the claims in the underlying action have been brought against them by reason of the fact that they were officers and directors of EMSI.[6] For reasons I explain below, none of these arguments are persuasive.

---

[6] *Marino v. Patriot Rail Co.*, 131 A.3d 325, 346 (Del. Ch. 2016) ("The scope of an individual's advancement rights normally turns on the pleadings in the underlying litigation that trigger the advancement rights.").

## A. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[7] Evidence must be "viewed in the light most favorable to the non-moving party."[8] "When the issue before the Court involves the interpretation of a contract, summary judgment is appropriate only if the contract in question is unambiguous."[9]  In other words, to prevail, Plaintiffs as the moving party "must establish that [their] construction is the *only* reasonable interpretation."[10]  Summary judgment is a particularly efficient method of resolving advancement disputes because "the relevant question turns on the application of the terms of the corporate instruments setting forth the purported right to advancement and the pleadings in the proceedings for which advancement is sought."[11]

---

[7] Ct. Ch. R. 56(c).

[8] *Williams v. Geier*, 671 A.2d 1368, 1375 (Del. 1996).

[9] *United Rentals, Inc. v. RAM Hldgs., Inc.*, 937 A.2d 810, 830 (Del. Ch. 2007).

[10] *Id.* (emphasis in original).

[11] *Weinstock*, 2003 WL 21843254, at *2.

## B. Plaintiffs Are Entitled to Advancement Under the SPA as a Matter of Law

I address Defendant's arguments against advancement in the order they raise them: (1) the right has been waived; (2) the right did not exist or was not preserved; or (3) the right is not available here since Plaintiffs have not been sued by reason of having been a director or officer of the Company.

### 1. The SPA Does Not Reflect a Bargained-For Waiver of Advancement

Defendant argues that Plaintiffs waived their right to advancement in two clear and unambiguous provisions of the SPA. First, Defendant highlights Article X of the SPA, specifically Section 10.10(a), which states, in part, that "the sole and exclusive remedy . . . for any breach or inaccuracy, or alleged breach or inaccuracy, of any representation, warranty or covenant under, or for any other claims arising in connection with, any of the Transaction Documents . . . shall be indemnification in accordance with this Article X" and "Sellers waive, release, and agree not to assert . . . to the fullest extent permitted by applicable Law, all other remedies, whether common law or statutory or at equity."[12] Defendant contends that the remedy sought in this action, advancement, is one of the "other remedies" that Plaintiffs expressly waived. Second, Defendant points to Section 12.3 of the SPA and argues that this

---

[12] SPA § 10.10(a).

provision "made clear the parties would bear their own costs and expenses associated with the performance and enforcement of the SPA."[13]  Section 12.3 reads: "Except as otherwise expressly provided for in this Agreement, each party hereto shall pay its own expenses and costs relating to the negotiation, execution and performance of the Transaction Documents and the transactions contemplated thereby."  Neither of the provisions Defendant has plucked from the SPA reveal that the parties agreed that Plaintiffs would enjoy no right to advancement post-closing.

For its part, Section 10.10(a) is clearly directed at limiting the remedies that an indemnified party can assert when *prosecuting* claims arising under the SPA.  It is true, as Defendant argues, that Section 10.10(a), standing alone, appears to provide that the sole and exclusive remedy of the indemnified parties for a breach the SPA shall be indemnification and that the parties waive, release and will not assert all other remedies.  But Defendant's construction of the "waiver" clause as a stand-alone waiver of all other remedies that may be available to the parties, including extra-contractual remedies, regardless of the nature of the claims or specific litigation posture of the parties, does not line up with what the parties actually said.

The first clause of Section 10.10(a) clearly and unambiguously states that the indemnified parties have agreed that, in any action between them for any breach of

_____

[13] Def.'s Answering Br. in Opp'n to Pls.' Mot. for Summ. J. ("Answering Br.") 18.

a representation or warranty or for any other claims arising under the agreement, the sole and exclusive remedy will be contractual indemnification. The second clause of Section 10.10(a) accents that limitation by expressly stating that remedies other than the agreed upon contractual indemnification will not be asserted in connection with any action arising under the SPA. What that provision does not address, however, is a situation, like here, where a claim for contractual indemnification has been brought and the party being sued is asserting an extra-contractual right in the context of defending that claim. Indeed, nothing in that provision reveals that the parties intended the waiver language to apply when a party asserts an extra-contractual claim for advancement in defense of a claim (rather than in prosecution of a claim) for indemnification under the SPA.[14]

Defendant next argues that Section 12.3 of the SPA is an express adoption of the American Rule for all intra-party disputes and that it must be read as a waiver of advancement in connection with all litigation arising under the SPA. Here again, the clear and unambiguous terms of the provision Defendant has invoked reveal the flaw in the argument. Section 12.3 states, in full, that "[e]xcept as otherwise

---

[14] In its Answer to the Verified Complaint, Defendant also pointed to a release provision (Section 3) in the Termination and Release Agreement executed by Plaintiffs in connection with the Acquisition as further support of its waiver argument. That argument merited only a footnote in Defendant's Answering Brief in Opposition to Plaintiffs' Motion for Summary Judgment. Answering Br. 19, n.9. In any event, I agree with Plaintiffs that the carve-out within Section 3 makes clear that Plaintiffs did not waive their right to advancement in that document.

expressly provided for in this Agreement, each party hereto shall pay its own expenses and costs relating to the negotiation, execution and performance of the Transaction Documents and the transactions contemplated thereby."[15] Plaintiffs, unsurprisingly, point to the lead-in clause of the provision and argue that there is, in fact, another provision in the SPA that "otherwise expressly provide[s] . . ." by clearly and unambiguously carving out Plaintiffs' right to advancement. For reasons I address below, I agree. There has been no waiver here.

2.  **Plaintiffs Preserved Their Right to Advancement for Claims Related to the SPA**

Section 6.5 contains a broad release of claims stating, in part, that "the Sellers, on their own and on behalf of their respective Affiliates . . . (collectively, the "Releasing Parties") hereby completely, unconditionally, and irrevocably forever release, waive, and discharge, and shall be forever precluded from asserting, any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities, of any kind or nature . . ." Section 6.5 goes on to carve out specific claims from this general release including "any right to indemnification that any Releasing Party has, in his or her capacity as an officer or director (or former officer or director), under the Governing Documents of the applicable EMSI Entity . . ."

---

[15] SPA § 12.3.

11

Defendant contends that Section 6.5's carve-out only addresses the right of the Company's directors and officers to pursue pre-existing indemnification obligations with respect to third-party claims unrelated to the SPA and does not include a separate and distinct right to advancement. Defendant's position can be broken down into two arguments. First, to the extent Plaintiffs' indemnification rights are carved out by Section 6.5, these rights are only preserved for third-party claims unrelated to the SPA and not for first-party claims related to the SPA. Second, even if the Court disagrees with this construction, Plaintiffs' pre-existing right to indemnification does not include a right to advancement.

Defendant's first argument, that the carve-out does not apply to first-party claims related to the SPA, ignores the language upon which it is based. As Defendant's counsel acknowledges, Section 6.5 begins with a release by the Sellers of first-party claims they may have had against the EMSI entities.[16] Despite this acknowledgement, Defendant would have the Court interpret the carve-out, which appears in the very same provision as the release of first-party claims, to apply only to third-party claims and any first-party claims unrelated to the SPA.[17] Defendant

[16] Oral Arg. on Pls.' Mot. for Summ. J. ("Oral Arg.") at 62 ("Your Honor, my understanding is that the sellers here are releasing first-party claims that they may have against any of the EMSI entities.").

[17] When asked at oral argument to cite an example of a first-party claim that would survive by virtue of the carve-out, counsel responded that a breach of fiduciary duty claim that was unrelated to the SPA would fit within the carve-out. When prodded to provide more detail, counsel described a hypothetical in which the directors were being sued for a breach of the

12

argues that such an interpretation is necessary in order to avoid rendering other provisions of the SPA, most notably Section 10.10(a) and Section 12.3, meaningless. In Defendant's view, if the carve-out applies to first party claims related to the SPA, and therefore the right to be indemnified and to have fees advanced is available even in disputes between the parties to the SPA, then the sole and exclusive remedy provision of Section 10.10(a) and the express adoption of the American Rule in Section 12.3 are effectively read out of the contract.

For reasons already explained, Defendant's interpretation of Sections 10.10(a) and 12.3 does not comport with their clear terms. Moreover, a construction of Section 6.5 that recognizes Plaintiffs' right to pursue advancement against the Company fits perfectly within the schemes actually memorialized within Sections 10.10(a) and 12.3. As previously stated, Section 10.10(a) limits the remedies of the parties when prosecuting claims under the SPA while Section 12.3 provides that in most situations, other than those otherwise expressly provided for elsewhere in the SPA, the parties will be responsible for their own fees and expenses. Interpreting the carve-out in Section 6.5 as preserving Plaintiffs' right to ultimate indemnification and advancement does not conflict with these provisions in any way

---

duty of loyalty based on a related party transaction. When asked whether this scenario actually reflected a carve-out that would have been contemplated by the parties, given that, at least in the derivative context, the breach of fiduciary duty claims would be extinguished by the transaction, there was no meaningful response. *See*, Oral Arg. at 66–68.

because Plaintiffs are enforcing an extra-contractual right in defense of a claim and therefore are not prosecuting a claim arising under the SPA in violation of Section 10.10(a). And they are asserting their advancement rights in a way "otherwise expressly provide[d]" for in the SPA consistent with Section 12.3.

Section 6.5, entitled "Release," begins with a release of first-party claims and then goes on to carve-out certain claims. In so doing, the parties defined the universe of claims they may have had against one another, released most of those claims using broad language and then defined any claims that remained pursuant to the carve-out. The fact that the carve-out in which the parties identified claims that would survive the broad release appears in the same provision in which the parties expressly released first-party claims they may have had against one another makes clear that the carve-out was intended to apply to those first-party claims that would otherwise have been released.

Defendant's second argument that Plaintiffs did not preserve their right to advancement in the SPA is equally unpersuasive. Defendant argues that to the extent the carve-out does apply to first-party claims, Plaintiffs preserved their right to indemnification but not to advancement. To support its argument, Defendant asserts that if the parties had intended to preserve both advancement and indemnification rights, they easily could have included the language "advancement and indemnification" in Section 6.5.

14

As a matter of prudent drafting, Defendant's point is well taken as its proffered language almost certainly would have foreclosed its resistance to the Plaintiffs' claims here. Even so, it cannot be said that the SPA reveals the parties' intent to shut down Plaintiffs' right to advancement simply because Section 6.5 fails to spell out that both advancement and indemnification rights were being preserved. In fact, an identical argument was made and ultimately rejected by the court in *Sodano v. American Stock Exchange LLC*.[18] There, the defendant argued that plaintiff's claim for advancement did not survive a settlement agreement because "if the Agreement was intended to preserve Sodano's advancement and ultimate indemnification rights, the parties could have easily written 'advance and indemnify.'"[19] The court found that argument unpersuasive because nothing in the agreement's reference to only indemnification revealed an intent to foreclose claims for advancement.[20] That reasoning applies with equal force here.

The right to advancement under Section 6.5 is best discerned by what that provision says, not by what it does not say. As noted, the relevant portion of Section 6.5 states that "[n]othing contained in this Section 6.5 shall (a) affect any right to indemnification that any Releasing Party has, in his or her capacity as an

---

[18] 2008 WL 2738583 (Del. Ch. July 15, 2008).

[19] *Id.* at \*10.

[20] *Id.*

officer or director (or former officer or director), under the Governing Documents of the applicable EMSI Entity . . ." Plaintiffs direct the Court to the Company's bylaws and argue that it is clear from that governing document that the parties understood the concept of indemnification to incorporate advancement and that this understanding carried over into the SPA. Defendant disagrees and argues that Plaintiffs have failed to offer any bases upon which the Court could leap from its construction of the term "indemnification" in the bylaws to that same construction of "indemnification in the SPA . . ."[21]

The reason to turn to the EMSI bylaws when construing the term indemnification is apparent in the clear terms of Section 6.5, which provide that the carve-out set forth there applies to "any right to indemnification . . . under the Governing Documents of the applicable EMSI Entity . . ." Undeterred and notwithstanding this language, Defendant proffers two reasons why the Court should decline to turn to the EMSI "Governing Documents." First, Defendant notes that there are two EMSI entities, EMSI Holding Company and EMSI Inc. Defendant points out, correctly, that only the bylaws of EMSI Holding Company provide a right to advancement; any such right is absent from the bylaws of EMSI Inc. Consequently, if the Court applies a different meaning to the term "indemnification"

---

[21] Answering Br. 26.

from the different governing documents of the two EMSI entities, then the term "indemnification" in Section 6.5 would likewise have multiple meanings—an unreasonable construction. Once again, Defendant has ignored the clear and unambiguous language of the SPA. Section 6.5 expressly contemplates that Company directors and officers shall continue to enjoy the right to indemnification that may exist within the governing documents "of the *applicable* EMSI Entity. . ."[22] The determination of which EMSI entity is the "applicable" EMSI entity for purposes of assessing the right to advancement necessarily depends on the nature of the claims the director or officer has been called upon to defend. Any other construction would ignore the plain language of the carve-out.[23]

Defendant also insists that defining "indemnification" in Section 6.5 differently than the term is defined in other provisions of the SPA (such as in Article X) is unreasonable because nothing in the SPA indicates that the parties intended that the term would have different meanings within the same contract. Defendant fails to appreciate, however, that the type of indemnification discussed in Section 6.5 is distinct from the type of indemnification addressed by other provisions in the SPA. By its clear and unambiguous language, Section 6.5 refers to any right

---

[22] SPA § 6.5 (Emphasis added).

[23] For reasons I explain below, it is appropriate in this instance for Plaintiffs to look to the governing documents of EMSI Holding Company.

17

to indemnification under the governing documents of the applicable EMSI entity. Other sections of the SPA, such as Article X, set forth the parties' rights to contractual indemnification as created by the SPA itself. Therefore, because it is evident on the face of the SPA that the meaning of indemnification under Section 6.5 is wholly distinct from any other meaning of that term as used in other parts of the SPA, it is not unreasonable to construe the term differently in each context. Indeed, in light of the plain meaning of the SPA's terms, it would be unreasonable to assign the same definition to the term "indemnification" throughout the document.

Finally, Defendant argues that even if Plaintiffs preserved a right to indemnification under the EMSI bylaws, the language in the carve-out is not broad enough to also encompass any right to advancement. Defendant highlights that Delaware law treats indemnification and advancement as separate rights and contends that the EMSI bylaws do as well. A determination of whether the language of the carve-out is broad enough to encompass a right to both indemnification and advancement requires reading the language used in Section 6.5 together with the language of the bylaws which are the source of that right.[24]

---

[24] To reiterate, the language of the carve-out in Section 6.5 states that "[n]othing contained in this Section 6.5 shall (a) affect any right to indemnification that any Releasing Party has, in his or her capacity as an officer or director (or former officer or director), under the Governing Documents of the applicable EMSI Entity . . ."

Turning to the EMSI Holding Company bylaws, Article VII entitled "Indemnification" begins with Section 7.1, "Right to Indemnification."[25] After recognizing a right to indemnification, Section 7.1 then explains the contours of that right by stating that "[t]he right to indemnification conferred in this Article VII shall be a contract right and shall include the right to be paid by the Corporation the expenses (including attorneys' fees) incurred in defending any such Proceeding in advance of its final disposition . . ."[26] Plaintiffs point to *Sodano* in support of their argument that this language within Section 6.5 is broad enough to capture the right to both advancement and indemnification as set forth in Section 7.1 of the EMSI Holding Company bylaws. As noted above, in *Sodano*, the court faced the identical

---

[25] Defendant argues that while both Plaintiffs were officers and directors of both EMSI Holding Company and EMSI Inc., the operating subsidiary, the alleged fraud only occurred at the operating subsidiary level. This is crucial, Defendant contends, because the bylaws of EMSI Inc. do not provide for any right to advancement. Because that is the entity where the fraud occurred, Defendant argues that the bylaws of EMSI Inc. are the "Governing Documents of the applicable EMSI entity" to which the Court should look when applying the carve-out in Section 6.5. As Plaintiffs point out, however, the complaint in the underlying action alleges a wide-ranging fraudulent scheme perpetrated by Plaintiffs while they were serving as officer and directors of both entities and makes no effort to distinguish between entities when describing the fraud. *See* Compl., C.A. No. 12648-VCS, at ¶¶ 3, 10, 53, 61, 62, 108, 161, 166, 180, 181. Indeed, in its own answering brief, Defendant asserts "to be clear, Buyer has asserted that Davis, Brook, and others, as directors and officers of HoldCo [EMSI Holding], possessed knowledge that HoldCo's SPA representations were false. However, when it comes to the actual fraudulent conduct evidence, as opposed to state of mind evidence, that conduct was undertaken at EMSI Inc." Answering Br. 14–15. While Defendant would have the Court attempt to compartmentalize these Plaintiffs' fraudulent acts by the different corporate hats they may have been wearing at any given time, this exercise makes little sense in the advancement context.

[26] EMSI Holding Bylaws § 7.1.

19

issue of whether an indemnification carve-out preserved both the indemnification and advancement rights of a former officer and director or only the right to indemnification if successful in the underlying litigation. The carve-out at issue there provided that the corporation "[would] indemnify . . . to the fullest extent permitted by law and the [company's] organizational documents."[27] After noting that the issue of how broadly to construe the term "indemnification" in a contractual carve-out was not novel, the court concluded that the language, "to the fullest extent permitted . . . by the [company's] organizational documents," was best read as intending to cover both advancement and ultimate indemnification.[28]

*Sodano* is on all fours with this case. The language of Section 6.5 states that the carve-out applies to "any right to indemnification" which, like the phrase "to the fullest extent permitted," is very broad. The bylaws, likewise, use the term "indemnification" broadly. Indeed, as was the case in *Sodano*, the right to advancement within the EMSI bylaws appears in a section entitled only "indemnification," a fact that was persuasive to the court in *Sodano*.[29] Perhaps even more persuasive, the bylaws state that "[t]he right to indemnification conferred in

---

[27] *Sodano*, 2008 WL 2738583, at *10.

[28] *Id.* at *11.

[29] *Id.* ("The broad uses of 'indemnification' include titling the article that grants both advancement and ultimate indemnification using only 'indemnification' . . .").

20

this Article VII . . . shall *include* the right to be paid by the Corporation the expenses (including attorneys' fees) incurred in defending any such Proceeding in advance of its final disposition . . ."[30]  The bylaws are clear, therefore, that the indemnification to which officers and directors are entitled includes the right to have their fees advanced.[31]

### 3. Plaintiffs are Parties to the Underlying Action "By Reason Of" Their Status as Officers or Directors of the Company

Defendant next argues that even if the Court concludes that Plaintiffs have not waived their right to advancement, and that the right has been preserved in the SPA through the EMSI Holding Company's bylaws, the Plaintiffs still are not entitled to advancement because they were not sued "by reason of" their status as officers and directors of EMSI Holding Company.  In support of this argument, Defendant

---

[30] EMSI Holding Bylaws § 7.1 (emphasis added).

[31] Defendant argues that to the extent the Court finds *Sodano* persuasive, it should deny summary judgment in order to allow them to take discovery.  Defendant insists that this is appropriate because the court in *Sodano* had the benefit of limited discovery in construing the provisions of the release and carve-out at issue there.  While it is true that the parties in *Sodano* had engaged in limited discovery, the court ultimately found it unnecessary to resort to that extrinsic evidence when construing the contractual language at issue.  In fact, the court concluded that the "clear intention of the parties as evident in the language of the NASD Settlement Agreement and Release and the NASD Certificate . . . was that Sodano would retain both his advancement and ultimate indemnification rights . . ." *Sodano*, 2008 WL 2738583, at *12.  The court went on to characterize the defendant's argument that the language should be interpreted as referring only to indemnification as a "non-sanctionable argument"—hardly a ringing endorsement of the defendant's proffered construction. *Id.* In this case, I see no reason to "kick the can down the road" to allow the Defendant to take discovery only to confirm what is evident on the face of the SPA and the operative bylaws.

21

attempts to invoke a line of cases in this court that have held that claims for breaches of "personal contractual obligations" are not brought "by reason of" the plaintiff's status as an officer or director. The cases are inapposite.

The most notable case in the line, and the one on which Defendant principally relies, is *Cochran v. Stifel Financial Corp.*[32] In *Cochran*, the court concluded that a corporate officer was not entitled to indemnification on a claim that he failed to repay a promissory note because that suit was not brought against the officer in his "official capacity" or by reason of the fact that he was an officer of the company.[33] Rather, the plaintiff had acted in a personal capacity to bind himself to a personal obligation owed to the corporation. Defendant argues that, just as in *Cochran*, the claim for which the former directors and officers of EMSI are being sued in the underlying action has been brought against them in their personal capacity as sellers of stock and therefore represents a claim for breach of a personal contractual obligation.

Our Supreme Court has set forth the test for determining when a covered person has been sued "by reason of" his official capacity stating that "if there is a nexus or causal connection between [a claim] and one's official capacity, those

---

[32] 2000 WL 1847676 (Del. Ch. Dec. 13, 2000), *aff'd in relevant part*, 809 A.2d 555 (Del. 2002).

[33] *Id.* at *6.

proceedings are 'by reason of the fact' that one was a corporate officer, without regard to one's motivation for engaging in that conduct."[34] Under this test, "the requisite connection is established if the corporate powers were used or necessary for the commission of the alleged misconduct."[35] As this court has previously observed, the *Cochran* line of cases is consistent with this "overarching test" for determining when a suit is an "official capacity" suit.[36] Defendant's attempt to invoke *Cochran* here as a means to avoid its advancement obligation is just the latest example of a corporate defendant attempting to broaden that decision beyond its intended reach and beyond its own rationale.[37] Cases following *Cochran* have clarified its scope and make clear that the underlying claim in this case has been

---

[34] *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 215 (Del. 2005).

[35] *Paolino v. Mace Sec. Intern., Inc.*, 985 A.2d 392, 406 (Del. Ch. 2009) (internal citations and quotation marks omitted).

[36] *Id.* ("*Cochran, Reddy,* and *Zaman* are thus fully consistent with the overarching test announced by our Supreme Court for determining when a covered person has been sued 'by reason of' his or her official capacity . . .").

[37] *Id.* at 404 ("As this case and others . . . demonstrate, corporations bent on limiting their exposure to mandatory indemnification and advancement provisions sought to read *Cochran* broadly as saying that if an individual agrees to serve in a covered capacity pursuant to an employment agreement, then his duties become a personal contractual obligation."). *See also, Holley v. Nipro Diagnostics, Inc.*, 2014 WL 7336411, at *9 n.35 (Del. Ch. Dec. 23, 2014) ("Indeed the Court in *Paolino* explicitly observed that defendant corporations were misreading cases like *Cochran* in an often unproductive effort to avoid paying the mandatory advancement and indemnification to which they previously agreed.").

brought by reason of the fact that Plaintiffs in this action were officers and directors of EMSI.

For example, in *Reddy v. Electronic Data Sys. Corp.*,[38] the author of *Cochran*, then-Vice Chancellor Strine, highlighted the importance of focusing on the allegations in the underlying proceeding.  He stated, "[c]ritically, the *Cochran* case did not . . . involve a situation in which the officer's alleged breach of his employment agreements was argued to be the identical conduct that was averred to be a breach of fiduciary duty."[39]  Similar to *Reddy*, in this case, the conduct that is alleged to be a breach of the SPA is the same conduct through which Plaintiffs are alleged to have misused their corporate powers.  And, as in *Reddy*, Plaintiffs will ultimately be obligated to repay the amounts advanced if they are not entitled to indemnification.  Therefore, the concerns about the circularity of payments from the corporation to a defendant that is alleged to have breached a personal contractual obligation "that existed in *Cochran* [but] did not exist in *Reddy*"[40] likewise do not exist here.  In fact, this concern about circularity, which Defendant has expressed, "has little purchase in the advancement context because the covered person is always

---

[38] 2002 WL 1358761 (Del. Ch. June 18, 2002).

[39] *Id.* at \*7.  Also critical to the *Reddy* court was that "the *Cochran* case did not involve any claim for advancement. . ." *Id.*

[40] *Paolino*, 985 A.2d at 406.

obligated to repay the fees advanced if not ultimately entitled to indemnification, thereby eliminating the problem of circularity."[41]  In *Reddy*, therefore, the court concluded that the former officer was "entitled to advancement for actions brought against him in an official capacity, notwithstanding the framing of the claims as breaches of contract."[42]  That same analysis applies here.

Providing further support to the conclusion that Plaintiffs here are being sued in the underlying action by reason of the fact they served as officers and directors is then-Vice Chancellor Strine's further elucidation of *Cochran* in *Zaman v. Amedeo Holdings, Inc.*[43]  In that case, the court rejected an argument by the corporation based on *Cochran* that the former officers were not entitled to advancement by noting that the claims brought against them were "grounded in [the former corporate officers'] alleged misuse of the substantial fiduciary responsibility they were given as key managerial agents."[44]  In distinguishing *Cochran*, the court explained that it was not the case that the plaintiffs were "alleged to have committed merely a breach of a specific term of a contract."[45]  Again, the court stressed that if the defendants in the

---

[41] *Id.*

[42] *Id.*

[43] 2008 WL 2168397 (Del. Ch. May 23, 2008).

[44] *Id.* at *28.

[45] *Id.*

underlying action were ultimately unsuccessful in defending their actions, they would not be entitled to indemnification or to keep the amounts advanced.

The same holds true here. The allegations in the underlying action against Plaintiffs are that they misused their positions as officers and directors of the Company in order to engage in a widespread fraud that involved the manipulation of the Company's business model and related financial reports for the purpose of facilitating a sale of the Company at an exaggerated price. These allegations, couched as breaches of representations and warranties in the SPA, are not merely allegations that Plaintiffs have breached specific contractual terms personal to them. Instead, Plaintiffs will be required to defend their actions as officers and directors of the Company and their alleged intentional abuse of their corporate powers.

When a corporation seeks to avoid an officer's demand for advancement on the ground that the claim the officer is defending is not an advanceable claim, in order to prevail, the claim at issue "must clearly involve a specific and limited contractual obligation without any nexus or causal connection to official duties."[46]

---

[46] *Paolino*, 985 A.2d at 407.

The claims in the underlying action are not nearly so limited.[47] Plaintiffs are entitled

to advancement as they defend these claims.[48]

---

[47] I note that even if this issue were a closer call, this court has previously stated that "[i]n advancement cases, the line between being sued in one's personal capacity and one's corporate capacity generally is drawn in favor of advancement with disputes as to the ultimate entitlement to retain the advanced funds being resolved later at the indemnification stage." *Holley*, 2014 WL 7336411, at *9.

[48] Defendant further contends that even if Davis may be entitled to advancement, former director and officer Brook has no right to advancement for his conduct at EMSI Inc. I relegate discussion of this argument to a footnote because it can be dismissed summarily. As Plaintiffs have pointed out, Brook is serving as an officer of the operating company, EMSI Inc., at the request of the holding company. Section 7.1 of EMSI Holding Company's bylaws extends the right to indemnification (which, as explained above, includes the right to advancement) to each person who is made party to a suit and has served "at the request of the Corporation as a director, trustee, officer . . . of another corporation . . ." Therefore, if Brook is serving as an officer of EMSI Inc. at the request of EMSI Holding Company, he is entitled to both indemnification and advancement under the bylaws. Defendant argues that Plaintiffs have provided no evidence that Brook was serving at the request of EMSI Holding Company. Not so. Brook's employment agreement with EMSI Holding Company clearly states that "if elected, appointed or designated, Executive shall hold . . . a seat on the Board, and such other offices, directorships or memberships of committees of the Company, Examination Management Services, Inc., a Nevada corporation and wholly-owned subsidiary of the Company . . ." Transmittal Aff. of Toni-Ann Platia in Further Supp. of Pls.' Mot. for Summ. J. Ex. I ("Employment Agreement") § 3. Brook, therefore, was contractually obligated to serve as an officer of EMSI Inc. at the request of EMSI Holding Company, a factual point that Plaintiffs have established through the clear and unambiguous language of Brook's employment agreement and the Company's bylaws. Under our law, the burden has now shifted to Defendant to put forth some evidence that puts this fact into dispute. *See*, *Moore v. Sizemore*, 405 A.2d 679 (Del. 1979). Defendant has not provided any explanation for how Brook might have come to be an officer of EMSI Inc. if not at the request of the holding company for which he worked and to whom he owed a contractual obligation to serve at the operating subsidiary upon request. Nor have they identified in their Rule 56(f) Affidavit any basis to believe that some other explanation may exist in the discovery they seek to take.

## C. Plaintiffs have Perfected Their Right to Advancement and are Entitled to Fees on Fees

In a last ditch effort to avoid advancement, Defendant argues that, even if the Plaintiffs may have a right to advancement for some of their fees and expenses, their claim must be dismissed for failure to make a proper advancement demand. Defendant's only gripe with Plaintiffs' demand is that they have not yet detailed the precise amounts of advancement they are seeking. As Plaintiffs correctly point out, however, Defendant has denied that Plaintiffs are entitled to any advancement at all. Therefore, it would have made little sense for Plaintiffs to have submitted detailed invoices with specific advancement requests when Plaintiffs were aware that Defendant intended to resist Plaintiffs' right to advancement of any amounts as a threshold matter. Indeed, in light of their strenuous resistance to Plaintiffs' advancement demand, Defendant's contention that, having now successfully litigated their right to advancement, Plaintiffs' claim should nonetheless be dismissed on technical grounds comes with ill grace.[49]

---

[49] This court has previously discussed the negative consequences of dismissing advancement claims on such grounds. *See*, *Reddy*, 2002 WL 1358761, at *8 ("To permit EDS to escape its advancement duties on this hyper-technical ground would invite abuse.") (*citing VonFeldt v. Stifel Fin. Corp.*, 714 A.2d 79, 84–85 (Del. 1998)) (eschewing undue formalism and hyper-technical readings of Section 145, which would contradict the statute's policy objectives).

28

Plaintiffs are entitled to advancement. The next step is to devise a set of procedures that will be used by the parties at the direction of the Court to manage Plaintiffs' specific demands for advancement and to settle any disputes regarding the amounts requested.[50] Plaintiffs are also entitled to fees on fees.[51] That the exact amount of fees on fees to which Plaintiffs are entitled may not yet be fully determined does not alter that right based on their success here. And finally, Plaintiffs are entitled to prejudgment interest from the date on which they made their demand.[52]

## III. CONCLUSION

For the foregoing reasons, Plaintiffs are entitled to advancement under the plain and unambiguous terms of the SPA and the applicable bylaws in defending against the claims brought in the underlying action by reason of the fact that they served as officers and directors of the Company. Therefore, Plaintiffs' motion for

---

[50] *See, e.g.*, *Danenberg v. Fitracks, Inc.*, 58 A.3d 991 (Del. Ch. 2012).

[51] *Blankenship v. Alpha Appalachia Hldgs., Inc.*, 2015 WL 3408255, at *28 (Del. Ch. May 28, 2015).

[52] Defendant opposes an award of prejudgment interest as "premature" since Plaintiffs have not detailed the precise amount of fees they are seeking. Defendant has not cited any legal authority for this position and I am aware of none. Because I have concluded that Plaintiffs made a proper advancement demand, their request for prejudgment interest dating back to that demand is appropriate.

summary judgment is GRANTED.  Plaintiffs shall submit an implementing order, on notice to Defendant, within ten (10) days.